**STATE of Minnesota, Respondent,**

v.

**Norman L. JACKSON, Appellant.**

**No. C5-83-87.**

Supreme Court of Minnesota.

March 30, 1984.

---

C. Paul Jones, State Public Defender, Kathy King, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas Johnson, Hennepin County Atty., Minneapolis, for respondent.

SIMONETT, Justice.

Defendant was charged by a grand jury in Hennepin County with two counts of second-degree murder, one alleging that he intentionally killed the victim, the other alleging that the killing occurred in the course of defendant's committing felonious assault. Minn.Stat. § 609.19 (1982). The trial court granted a defense motion for judgment of acquittal of the first charge at the conclusion of all the evidence. The jury found defendant guilty of the other charge. The trial court sentenced defendant to an executed prison term of 284 months in prison, which is within the presumptive sentence range (270–298) for a severity level X offense when committed by a person with a criminal history score of five. On appeal defendant argues (1) that his conviction of second-degree felony murder is barred by the so-called "merger doctrine," (2) that the prosecutor's failure to disclose the prior criminal record of a key state's witness constitutes prejudicial error, and (3) that the court erred in computing defendant's criminal history score as being five rather than four. We affirm defendant's conviction but remand for resentencing.

The killing occurred on the evening of March 25, 1982, in the hallway of a sparsely occupied apartment building in north Minneapolis. Both defendant and the victim were selling marijuana from the building. The victim told some potential customers of defendant that they should not buy defendant's marijuana because it was "wop," which is slang for bad marijuana. Defendant took offense at this and, apparently after the customers left, stabbed the victim. Defendant then left the area with a man named Robert "Tony" Norris, telling him that he had just "cut" the victim.

Friends of the victim found him unconscious. Thinking he was having a drug-related seizure, they took him into an apartment and attempted to revive him. When he failed to respond, they called an ambulance and he was taken to a hospital. The victim never regained consciousness. An autopsy revealed that the cause of death was blood loss from a knife cutting the aorta.

Later in the evening defendant admitted to one Eddie Robert "Bobby" Baker that he had stabbed the victim and that Norris, who had been outside the building at the time of the stabbing, had thrown the knife away for him.

Defendant was arrested the following evening. He admitted to police that he had argued with the victim but denied that he had stabbed him or had ever carried a knife. Defendant's denial that he carried a knife was contradicted by four witnesses, two of whom testified that he had pulled the knife on another person, apparently in a joking manner, shortly before the fatal stabbing.

1. Defendant first urges that we adopt the rule that a felony cannot support a conviction of felony murder unless the felony is independent of the homicide, as would be the case with robbery or burglary but is not the case with assault. Defendant contends that the absence of such a rule permits the state to obtain a second-degree murder conviction without having to prove the element of intent.

When felony murder was classified as third-degree murder, this court repeatedly refused to adopt the so-called "merger doctrine," which is the name for the rule defendant wants us to adopt. *See, for example, Kochevar v. State,* 281 N.W.2d 680 (Minn.1979). In *State v. Loebach,* 310 N.W.2d 58, 65 (Minn.1981), we again rejected a "merger doctrine" argument, noting that it "is an argument which has been made countless times by other defendants and rejected each time by this court."

Presumably the legislature was aware of these "countless" cases when it reclassified felony murder in 1981, changing it from third-degree to second-degree murder. Act of May 19, 1981, ch. 227, §§ 10–11, 1981 Minn.Laws 1010. The legislature has the authority under the state constitution to make certain conduct criminal, to classify crimes, and to set punishment for crimes. Under the circumstances, the arguments urging adoption of the so-called "merger doctrine" are more appropriately addressed to the legislature.

2. Defendant next contends that he deserves a new trial because he was prejudiced by the prosecutor's failure to provide defense counsel with the criminal record of Baker, admittedly one of the state's key witnesses against defendant. The state replies that defendant did not specifically request the record of Baker's convictions; that, in any event, the state had no obligation to provide the defense with the record unless the state already had the record in its possession; and that, even though the state had no obligation to try to obtain the record at the request of defense counsel, it made a good faith effort to do so.

Baker alluded in his testimony to some outstanding parking tickets. He was not questioned about his prior felony record and he did not reveal that he had such a record. That record consisted of prior convictions in Michigan for robbery and possession of heroin.

Minn.R.Crim.P. 9.01, subd. 1(1)(a), provides as follows:

The prosecuting attorney shall disclose to defense counsel the names and addresses of the persons whom he intends to call as witnesses at the trial *together with their prior record of convictions, if any, within his actual knowledge.* He shall permit defense counsel to inspect and reproduce such witnesses' relevant written or recorded statements and any written summaries within his knowledge of the substance of relevant oral statements made by such witnesses to prosecution agents.

(Emphasis added.) The comments state: The rules are intended to give the defendant and prosecution as complete discovery as is possible under constitutional limitations.

\*      \*      \*      \*      \*      \*

Rule 9.01, subd. 1(1)(a), providing for the discovery of the prosecution's trial witnesses, with their written or recorded statements and written summaries of oral statements, and their criminal records, substantially follows ABA Standards, Discovery and Procedure Before Trial 2.1(a)(i)(ii)(vi) (Approved Draft, 1970) and Preliminary Draft of Proposed Amendments to F.R.Crim.P. 16(a)(i)(vi) (1970) (48 F.R.D. 553, 587–589).

The approved draft of the ABA Standards cited in the comments to our rule provided for disclosure of material and information "within [the prosecutor's] possession or control," including "any record of prior criminal convictions of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial." Standards Relating to Discovery and Procedure Before Trial 2.1(a)(vi) (Approved Draft, 1970). The comments to this provision indicated that the purpose of requiring

disclosure of the prior criminal records of state's witnesses was to place the defendant in the same position as the prosecution, "which almost invariably has knowledge of the defendant's record, if any."

Section 2.1(a)(vi) has since been changed to routinely require disclosure only of "any record of prior criminal convictions of the defendant or of any codefendant." ABA Standards for Criminal Justice 11–2.1(a)(vi) (1982). The comment to this provision reads in part:

> The provision for disclosure of the defendant's and any codefendant's records of prior convictions is new to the standard. Original standard 2.1(a)(vi) provided for disclosure of the prior criminal records of prosecution witnesses. Such records continue to be discoverable under the open file disclosure rule if the prosecutor already has the prior record on hand. However, where the prior record of a prosecution witness would have to be generated for disclosure purposes, discovery is now governed by standard 11–2.5 (discretionary disclosures) in order to prevent the generation of prior records not needed by the defense, to minimize harassment of witnesses, and to reduce the burden on the record-keeping agencies.

The comment to the new section 2.5(a) reads:

> The original standard provided that the prosecutor should automatically disclose to the defense the prior criminal records of prosecution witnesses. Under the open file disclosure of the revised standard, the defense would still obtain the prior records of witnesses when those records are already in the prosecutor's file on the defendant. However, unlike original standard 2.1, the revised standard does not require the prosecutor to take affirmative steps to acquire the prior records of witnesses when those records are not already on hand. Instead, the defendant who wants the prior record of a witness may make an application for the record under this standard. The change reflects the Task Force concern that victims and witnesses might be intimidated by the prospect of the prior record requirement or harassed by the fingerprinting required in order to obtain accurate prior record information. In addition, the routine request for current prior record information of all prosecution witnesses in all cases, whether or not a prior record was likely, was viewed as likely to place an expensive and unnecessary burden on record-keeping offices. Judicial supervision of prior record requests permits the Task Force concerns to be accommodated without denying legitimate defense needs for the records of the prior convictions of a particular witness.

The comments to our rule also refer to the "Preliminary Draft of Proposed Amendments to F.R.Crim.P. 16(a)(i)(vi) (1970) (48 F.R.D. 553, 587–589)." That provision would have required the prosecution, on request of the defense, to furnish the defense with the names and addresses of all government witnesses as well as any records of prior felony convictions of any such witness which were within the knowledge of the prosecution. The United States Supreme Court approved this amendment in 1974 but it was stricken by Congress. 2 C. Wright, Federal Practice and Procedure § 254 (1982). However, under F.R.Crim.P. 16(a)(1)(C), the government, upon request, must disclose to the defense all documents, etc., that are "within the possession, custody or control of the government" and that are "material to the preparation of his defense." Professor Wright states:

> The proposal to give the defendant a right to learn the prior criminal record of government witnesses was stricken with the proposal about the names of witnesses, although there is no indication that Congress felt any special concern about criminal records as contrasted with names. It did approve the amendment giving defendant a right to be furnished his own criminal record. Information about the criminal record of prosecution witnesses is important to have for cross-examination, and defense counsel is at a

substantial disadvantage without it. Thus it seems clearly "material to the preparation of his defense" within Rule 16(a)(1)(C). Even so, this information has been refused in many cases, although in the more recent cases there has been a trend toward allowing defendant to have this information, at least at the time of trial.

■ Under the Federal Constitution, evidence that could be used to impeach a government witness must be disclosed to the defense if the information is requested and if the reliability of the witness might affect the outcome of the trial. In *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the United States Supreme Court ruled that the defendant there was not deprived of due process by the government's failure to provide her with the prior criminal record of the victim, which defendant contended could have been used as further evidence of the victim's violent character. In *Agurs* the defendant never requested the information. *Agurs* arguably stands for the proposition that if a defendant in a case specifically requests the prior criminal record of a prosecution witness and the prosecutor fails to respond, then any conviction must be set aside if the evidence might have affected the outcome of the trial.

■ We interpret the Minnesota rule as (a) requiring the prosecution to disclose all records within its possession of prior convictions of state's witnesses and (b) providing for court orders requiring the prosecution to make a reasonable effort to obtain the records in those situations where the prosecution does not have the records but the defendant specifically requests them and it appears that the records will be material to the defense.

The record on appeal does not enable us to determine the procedural facts with certainty. It appears the defense informed the court that it felt the prosecutor had not made a good faith effort to provide the defense with the criminal records of the state's witnesses and that, in the opinion of defendant's trial counsel, "at least one of the state's witnesses [had] an out-of-state record which the state might have secured with a better effort." However, the record does not show an actual motion by the defense, nor does it establish that the prosecutor had actual knowledge of Baker's record. Although the record indicates that the state apparently ran a computer check on its witnesses, it is not clear why the check did not result in the discovery of Baker's record. The defense apparently learned of Baker's record when Baker testified in a subsequent trial against a different defendant for a different crime.

■ On this record we cannot determine whether the prosecutor violated the rules. In any event, we are satisfied that if there was a violation, it was not prejudicial. Baker's testimony was not the only damning evidence against defendant, a fact that decreases the likelihood that any error was prejudicial. Further, the testimony of a defense witness, Van White, corroborated significant parts of Baker's testimony, specifically, that defendant had a private conversation with Baker. Defendant admittedly had an argument with the victim. There was also evidence that defendant carried a knife and that he had pulled it on another person shortly before the stabbing of the victim occurred. Cases bearing on a determination of prejudice in this context include: *State v. Dye,* 333 N.W.2d 642 (Minn.1983) (delay in disclosing exculpatory evidence held nonprejudicial); *State v. Daniels,* 332 N.W.2d 172 (Minn.1983) (failure to disclose a police report before trial and subsequent use of it to impeach a defense witness on cross-examination was nonprejudicial violation of the disclosure rules); *State v. Saxton,* 331 N.W.2d 240 (Minn.1983) (delay in disclosing evidence held nonprejudicial); *State v. Hall,* 315 N.W.2d 223 (Minn.1982) (failure to comply with disclosure rules held to require new trial); *State v. Schwantes,* 314 N.W.2d 243 (Minn.1982) (prosecutor's failure to comply with disclosure rules held to require new trial); *State v. Zeimet,* 310 N.W.2d 552 (Minn.1981) (failure to disclose exculpatory information to defendant before trial held

to require new trial). We conclude that any violation was not prejudicial.

3. Defendant's final contention is that the trial court erred in computing his criminal history score.

■ It appears that one of the five criminal history points of defendant was a gross misdemeanor/misdemeanor point and that one of the misdemeanor convictions used to obtain that point was a conviction of violating the Minneapolis ordinance against consuming alcohol in public. Defendant's brief argues that this was error and the state agrees, as do we. The state counters, however, by arguing that the defendant has no cause to complain because the state discovered, apparently while working on its brief, that one of the convictions used to obtain the gross misdemeanor/misdemeanor point was an out-of-state conviction that could have been used as a felony conviction. This is defendant's 1969 Tennessee conviction for assault with intent to commit murder, a felony under Tennessee law. The state concedes that the sentence defendant received for this was confinement in prison for not more than 1 year, but it argues that under Tennessee law the conviction was nonetheless a felony. Defendant asserts in his reply brief that the state forfeited this issue by not raising it in the trial court and by not appealing the sentence. He also argues that the record on appeal does not establish that defendant's conduct in Tennessee could constitute a felony assault in Minnesota and he points to Minnesota Sentencing Guidelines and Commentary II.B.1.c. and II.B.104 (1982), indicating that in Minnesota when the defendant receives a sentence of under 1 year and 1 day, the conviction is to be counted as a misdemeanor or gross misdemeanor for the purpose of computing his criminal history score.

Since defendant's sentencing in Tennessee was under 1 year and 1 day, we conclude that defendant is entitled to have his Minnesota sentence recomputed on the basis of a criminal history score of four. Since defendant presumably is also going to seek resentencing according to the recent reclassification of felony murder as a severity level IX offense, we remand for resentencing rather than simply correcting the sentence ourselves.

Remanded for resentencing.