**Dorothy B. CARLSON,
et al., Appellants,**

v.

**Darlene CHERMAK, Douglas County
Recorder, et al., Respondents.**

No. C8–01–1475.

Court of Appeals of Minnesota.

Feb. 26, 2002.

James M. Neilson, Babcock, Neilson, Mannella, LaFleur & Klint, P.L.L.P., Anoka, MN, for appellants.

Paul Donald Reuvers, Iverson Reuvers, L.L.C., Bloomington, MN, for respondents.

Considered and decided by TOUSSAINT, Chief Judge, HANSON, Judge, and FOLEY, Judge.

## OPINION

FOLEY, Judge.*

Appellant landowner Dorothy Carlson unsuccessfully sought a variance from respondent Douglas County's shoreland development ordinance. She did not appeal the denial by the Douglas County Board of Adjustment (BOA), but five months later, after the 30–day statutory period for appeal had run, she commenced this declaratory-judgment action challenging the applicability and enforceability of the shoreland ordinance to her property. The district court assumed subject-matter jurisdiction and dismissed the action on the merits, concluding the ordinance was applicable to Carlson and the county had authority to enforce the ordinance against her property. Because we conclude that Carlson's declaratory-judgment action presented claims arising out of the denial of the variance that should have been raised on direct appeal from the BOA's variance denial, we affirm the dismissal on the ground of lack of subject-matter jurisdiction.

## FACTS

Appellant Dorothy Carlson originally owned one parcel of land on Lake Louise in Douglas County. In 1979, the parcel was platted as "Carlson's Shore" and divided into five lots.

In 1990, the Minnesota Legislature declared shoreland development a state concern and established new restrictions on shoreland development requiring counties to adopt state standards in their zoning ordinances. 1990 Minn. Laws ch. 391, art. 6 §§ 25–29 (now codified at Minn.Stat. §§ 103F.201 (regulatory purpose of shoreland development), .211, .215 (listing criteria for subdivision, use, and development of shoreland, which must be incorporated by commissioner of natural resources into standards and model ordinance for counties) (2000)). Compliance with the shoreland development legislation was ensured by providing that counties failing to adopt an adequate shoreland development ordinance would have to pay the cost incurred by the commissioner in adapting the state model ordinance to the county. *See* Minn. Stat. § 103F.215, subd. 4.

Douglas County opted to approve a zoning ordinance using identical language to

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

that found in the model. The pertinent part of the Douglas County ordinance tracks with the model, stating that "[i]f, in a group of two or more contiguous lots under the same ownership, any individual lot does not meet the [20,000 square feet minimum requirement], the lot must not be considered as a separate parcel of land for the purposes of sale or development." Minn. R. 6120.3300, subpt. 2D; Douglas County, Minn., Zoning Ordinance §§ III.C.9, V.F.5.c (May 9, 1983). The Douglas County ordinance clearly stated that this and other performance standards were designed to encourage a high standard of development and to prevent and eliminate any incompatible conditions. Douglas County, Minn., Zoning Ordinance § V.

After Carlson sold Lot 1, a shoreland parcel, on May 14, 1999, respondent Douglas County Recorder refused to record the warranty deed, noting on the deed: "Held. Per zoning. Needs to sell both lots—cuz non-conforming. Need variance." Carlson then sought a variance from the BOA. Her application requested that she be allowed to subdivide her land to create a nonconforming parcel. Because Lot 1 was 8,300 square feet and contiguous Lot 2 was 8,700 square feet, separate or combined, her lots were still less than the required 20,000 square feet for a conforming parcel.

After a hearing, including comments by Carlson's representative, the BOA denied the variance with seven accompanying findings of fact. The BOA specifically stated that approval of the requested variance would only strengthen a nonconformity and would require future variances with regard to improvements. It also found that Carlson could continue to own the property and rent the structure on Lot 1, but could not sell Lot 1 without violating the Department of Natural Resources' (DNR) model rules, the county's compre-

hensive plan, and its subdivision and zoning ordinances.

Seven months later, Carlson filed a district court action for mandamus to compel the county recorder to record the deed and for a declaratory judgment that the recorder cannot refuse to record the deed. That action was rendered moot by Carlson and the Douglas County Recorder's stipulation that the county could record the deed. The stipulation also reserved the county's right to take action to enforce the ordinance, and Carlson's right to amend the complaint to bring a declaratory-judgment action "concerning the county's entitlement to enforce any state or local zoning regulations after a deed is recorded concerning the property which is the subject of this lawsuit." In line with the stipulation, Carlson amended her complaint to allege that the county cannot enforce its ordinance against her property.

On cross-motions for summary judgment, the district court concluded that Carlson could not challenge the denial of the variance because she had failed to file a timely appeal. Nevertheless, the court proceeded to the merits of the action challenging the county's authority to enforce its ordinance against her. The court concluded that the county had authority to do so and dismissed the action. This appeal followed.

## ISSUE

Did the district court correctly conclude that it had subject-matter jurisdiction to determine whether the county had the authority to enforce the zoning ordinance against Carlson?

## ANALYSIS

In their briefs on appeal, neither party raised the issue of the district court's subject-matter jurisdiction over the declaratory-judgment action. They both apparently

relied on their stipulation as a basis for the district court's exercise of limited subject-matter jurisdiction. At oral argument, however, the county stated that the district court's lack of subject-matter jurisdiction was dispositive and justified dismissal of the district court action.

 An appellate court will determine jurisdictional facts on its own motion even though neither party has raised the issue. *Davidner v. Davidner*, 304 Minn. 491, 493, 232 N.W.2d 5, 7 (1975). Subject-matter jurisdiction is a question of law, which this court reviews de novo. *Handicraft Block Ltd. P'ship v. City of Minneapolis*, 611 N.W.2d 16, 19 (Minn.2000). If the district court did not have jurisdiction to decide the declaratory-judgment action, its action is void and this court cannot review the district court's decision. *Neitzel v. County of Redwood*, 521 N.W.2d 73, 76 (Minn.App. 1994) (district court judgment vacated because appellant failed to timely obtain a writ, which was only available method to obtain judicial review), *review denied* (Minn. Oct. 27, 1994).

The district court concluded that Carlson's failure to appeal from the denial of the variance precluded her from challenging the denial of the variance and from raising "[a]ny arguments of authorization, constitutionality or hardship." Nevertheless, the court went on to decide the issue framed in the parties' stipulation, namely, whether the county had authority to enforce the zoning ordinance and prevent the sale of Carlson's property. We conclude the court erred in treating the declaratory-judgment claims as distinct from those arising out of the variance proceeding.

 Parties cannot confer subject-matter jurisdiction on a court by consent. *No Power Line, Inc. v. Minn. Envtl. Quality Council*, 262 N.W.2d 312, 321 (Minn. 1977). The district court must have had an independent source of subject-matter jurisdiction to entertain the declaratory-judgment action. While the grant of subject-matter jurisdiction to the district courts is broad, the district court has only that jurisdiction conferred by the Minnesota Constitution or by law. Minn. Const. art. VI, § 3; Minn.Stat. § 484.01, subd. 1 (2000).

 Here, the legislature specifically provided for district court appellate jurisdiction over questions of law and fact arising out of the denial of a variance by the BOA. Minn.Stat. § 394.27, subd. 9 (2000). Such a provision is in line with case law recognizing that quasi-judicial decisions, like variances and special use permits, are appropriately subject to direct judicial review, whereas legislative decisions, like rezoning decisions, are properly reviewed by a declaratory-judgment action. *See In re Merritt*, 537 N.W.2d 289, 290 (Minn.App. 1995) (distinguishing request for variance and request for rezoning and appropriate method of review for each). Deference to the authorizing statute that specifically provides for direct appeal of this variance decision, therefore, is appropriate. *City of Hibbing v. Baratto*, 620 N.W.2d 58, 60 (Minn.App.2000). Because it is undisputed that Carlson failed to appeal within the statutory period, the district court could exercise subject-matter jurisdiction over only those claims in the declaratory-judgment action that were independent of the denial of the variance.[1]

---

1. Carlson's citations to enforcement actions as support for bringing a separate action for declaratory relief are misplaced. In the distinct procedural posture of a county's action to enforce an ordinance against landowners, aggrieved parties may raise constitutional, equitable, and other defenses to enforcement whether or not they appealed denial of a

We see no distinction between the issues raised in Carlson's declaratory-judgment action and those that could have been brought on appeal from the BOA's action denying the variance. *See, e.g., Graham v. Itasca Co. Planning Comm'n*, 601 N.W.2d 461 (Minn.App.1999) (district court's appellate jurisdiction over denial of variance included constitutionality of ordinance and reasonableness of county's action). First, both were personal challenges to the applicability and enforceability of the ordinance as applied to Carlson and her land. Second, both requested the same relief—excluding her property from the effect of the ordinance. Although Carlson uses slightly different language to frame the issues in her declaratory-judgment action, her challenge remains the same. Therefore, we conclude the district court did not have subject-matter jurisdiction over the declaratory-judgment action.

### DECISION

The district court did not have subject-matter jurisdiction over a declaratory-judgment action raising questions of law and fact arising out of a board of adjustment's denial of a variance.

**Affirmed.**

variance within the statutory appeal period. *See County of Freeborn v. Claussen*, 295 Minn. 96, 98, 203 N.W.2d 323, 325 (1972) (landowner who failed to timely appeal denial of petition to rezone could raise constitutional issues in defending enforcement action brought by county); *accord County of Barry v. Edmonds*, 25 Mich.App. 589, 181 N.W.2d 599 (Mich. App.1970) (taxpayer who failed to timely appeal denial of variance could raise constitutional defense by counterclaim in action by county to enjoin his violation).