**STATE of Minnesota, Respondent,**

**v.**

**William GRIGSBY, Appellant.**

**No. A10–1686.**

Court of Appeals of Minnesota.

Aug. 15, 2011.

104

Lori Swanson, Attorney General, St. Paul, MN, John Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Andrew G. Birkeland, Special Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by STONEBURNER, Presiding Judge; JOHNSON, Chief Judge; and WILLIS, Judge.*

## OPINION

STONEBURNER, Judge.

Appellant challenges his convictions of second-degree felony murder and second-degree manslaughter, arguing that (1) the judge who presided over his certification hearing committed plain error by failing to honor a notice to remove that was filed within seven days after receipt of notice that the judge would preside over the proceedings in district court; (2) the district court lacked subject-matter jurisdiction over post-certification additional and lesser-included charges; (3) alternatively, if the district court had jurisdiction over post-certification additional and lesser-included charges, Minn.Stat. § 260B.125, as applied, unconstitutionally denies appellant due process; (4) evidentiary rulings precluding gang-related evidence during the state's case violated appellant's constitutional rights to present a complete, fair, and meaningful defense and to cross-examine a witness as to bias, prejudice, and influence; and (5) charging assault as a

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

predicate offense to felony murder deprived appellant of his constitutional right to due process. Because (1) the district court's refusal to honor the notice to remove was not plain error; (2) the certification statute is not offense-specific or unconstitutional as applied; (3) any error in excluding gang-related evidence during the state's case was harmless; and (4) assault may be a predicate offense to felony murder, we affirm.

## FACTS

On August 23, 2008, appellant William Grigsby Jr., whose date of birth is December 6, 1992, attended a party at a residence in St. Paul. Although there are conflicting reports about how the events unfolded, it is not disputed that (1) Grigsby encountered J.S. at the party in the back yard; (2) Grigsby and J.S. had been involved in a fight at school approximately two years earlier; (3) J.S. rebuffed Grigsby's offer to shake hands at the party; (4) shortly thereafter, Grigsby rapidly fired six shots from a .44 caliber gun that he pulled out from under his shirt; (5) one of the shots struck and killed J.S.; and (6) Grigsby fled. Police questioned Grigsby after witnesses identified him as the shooter. At first, Grigsby denied any involvement in the shooting, but he eventually confessed to the shooting.

A delinquency petition was filed, alleging that Grigsby committed second-degree intentional murder, in violation of Minn. Stat. § 609.19, subd. 1(1) (2008). After a certification hearing, the proceeding was certified for trial in adult court. Grigsby appealed certification, and this court affirmed. See In re Welfare of W.H.G., No. A08–1996, 2009 WL 1684487, at *1 (Minn.

App. June 16, 2009), *review denied* (Minn. Aug. 26, 2009).

Grigsby was then charged by criminal complaint with second-degree intentional murder, and the judge who had presided at the certification hearing was assigned to the adult prosecution. Five days after receiving notice of the assignment, Grigsby made a motion for the district court judge to recuse himself, or remove himself from the case under Minn. R.Crim. P. 26.03, subd. 13(4) (2009).[1] The district court judge declined to recuse himself and denied removal as untimely. Grigsby's motion for reconsideration was denied on the ground that the assigned judge had presided over the matter in juvenile court, making the removal request ineffective. Grigsby did not seek a writ of prohibition challenging this ruling.

Shortly before trial in May 2010, the state amended the complaint to add a charge of second-degree felony murder. And at trial, the judge instructed the jury to also consider the lesser-included offense of second-degree manslaughter.

Grigsby gave appropriate notice of the defense of self-defense, based on his assertions that (1) J.S. and many others at the party were members of the East Side Boys gang; (2) Grigsby encountered a hostile atmosphere at the party; (3) after J.S. refused to shake hands, members of the East Side Boys gang surrounded him, causing him to believe that he was going to be attacked; (4) he pulled out the gun and shot into the ground without intending to harm anyone; (5) the gun was large and shooting it forced him to step backwards; and (6) the flash from the first shot caused him to close his eyes, and the gun just kept firing until it was empty.

1. The removal provision, substantively unchanged, is currently found at Minn. R.Crim. P. 26.03, subd. 14(4) (2011).

Before trial, the state moved in limine to preclude Grigsby from referring to or questioning any witness regarding possible gang involvement or criminal history. Grigsby made several offers of proof of witness testimony that (1) many of the partygoers were members of the East Side Boys gang and (2) gang members formed a semi-circle around Grigsby and signaled their intent to "jump" him just prior to the shooting.

The parties assert that the admissibility of evidence about gang membership was discussed at several pretrial conferences. The record contains a transcript only of the discussion that occurred just before the trial began, during which the state moved for an order "that [Grigsby] not mention the word 'gang' ... unless and until [Grigsby] testifies." The prosecutor argued that gang evidence is inadmissible character evidence and that only Grigsby's testimony could make gang evidence relevant in this case. The prosecutor argued that "unless and until [Grigsby] testifies, until he says it was self-defense, and that the fact that these gang members were in the back yard supposedly is something that went to his fear, it's not relevant in this trial.... [T]he only relevant inquiry with respect to the gang evidence is what [Grigsby] believes."

Grigsby argued that witnesses would prove that as many as ten East Side Boys, including the state's primary eyewitness, were in the back yard when the shooting occurred. Grigsby argued that the fact that the people surrounding him were gang members was relevant to self-defense and was more probative than prejudicial. The state countered that only Grigsby's testimony would make the issue relevant and that "it's not whether other people think he should have been afraid."

The district court stated its ruling orally on the record that there would be no testimony about gangs "until such time as [Grigsby] chooses to testify." The district court noted that Grigsby was not charged with committing a crime for the benefit of a gang and that exclusion of alleged gang affiliation to establish bias had been held by this court to be harmless error in a case in which a non-gang witness testified consistently with alleged gang witnesses, which the district court anticipated would occur in this case. The district court did not place any additional limitations on the admissibility of gang-related evidence.

Marcus O'Neal testified for the state that he was standing next to J.S. when J.S. refused to shake hands with Grigsby, after which there was a "stare down" between J.S. and Grigsby. O'Neal testified that Grigsby "must have thought that we w[ere] going to beat him up" because he then pulled the gun out and shot. When asked if he had approached Grigsby in a threatening manner, he replied, "It depends on what you mean ... by ... threatening." After the state rested, Grigsby called one witness who testified that after J.S. refused to shake hands with Grigsby, J.S. and several other boys were "walking up on" Grigsby and spreading around him, signaling that they were getting ready to fight, and that is when shots were fired. This witness was impeached with a prior inconsistent statement, which she explained that she gave because she was "scared of what could happen ... from the other side."

Grigsby testified that people at the party were wearing East Side Boys gang colors, and he identified the host of the party, J.S., O'Neal, and several others present as East Side Boys gang members. Grigsby testified that after J.S. refused to shake hands, the East Side Boys surrounded him in a half-circle and backed him up toward the garage, blocking his exit. Grigsby testified that he was positive that he was going to "get jumped." He pulled out the gun, "the gun ... just kept

going off," and then there was no one around him. Grigsby did not recall his witness or any of the state's witnesses to elicit additional gang-related evidence and did not seek to introduce gang references that had been redacted from his statement that was introduced by the state.

The jury found Grigsby not guilty of second-degree intentional murder but guilty of second-degree felony murder and second-degree manslaughter. Grigsby was sentenced to 180 months (15 years) in prison for second-degree felony murder. This appeal followed.

## ISSUES

I. Is Grigsby entitled to review of the district court's refusal to honor his notice to remove? If so, did the district court err in not honoring the request?

II. Is certification under Minn.Stat. § 260B.125 offense-specific, such that the district court lacked jurisdiction over the charges of felony murder and second-degree manslaughter that were added after certification?

III. If application of Minn.Stat. § 260B.125 deprives Grigsby of a certification hearing on the offenses of felony murder and second-degree manslaughter, does the application of the statute deny his right to due process?

IV. Did the district court's exclusion of gang-related evidence before Grigsby's testimony constitute reversible error?

V. Can assault be the predicate offense to a charge of felony murder?

## ANALYSIS

**I. Grigsby failed to preserve the issue of whether the district court erred by ruling that his notice to remove was not effective, and Grigsby has failed to establish that the ruling was plain error.**

Minn. R.Crim. P. 26.03, subd. 13(4) (2009), provided at all relevant times,

[t]he defendant or the prosecuting attorney may serve on the other party and file with the court administrator a notice to remove the judge assigned to a trial or hearing. The notice shall be served and filed within seven (7) days after the party receives notice of which judge is to preside at the trial or hearing. . . . No notice to remove shall be effective against a judge who has already presided at the trial, Omnibus Hearing, or other evidentiary hearing of which the party had notice, except upon an affirmative showing of cause on the part of the judge.

The certification hearing took place on September 23, 2008, and the proceeding was certified to the district court by order dated October 16, 2008. By order dated October 9, 2009, the parties were notified that the district court proceeding was assigned to the same judge who presided at the certification hearing. Four days later, Grigsby filed a "Motion for Recusal or Removal," requesting that the judge recuse himself from presiding over the district court matter, and, in the alternative, giving notice to remove the judge under rule 26.03, subdivision 13(4). The state opposed removal, arguing that because the judge had already presided over the certification hearing—an evidentiary hearing—Grigsby's notice to remove was not effective. The judge declined to recuse himself and ultimately held that the notice to remove was ineffective because he had presided at an evidentiary hearing of which Grigsby had notice. Grigsby did not seek a writ of prohibition, and the judge presided over the trial.

█ "It is well settled that '[t]he proper remedy to pursue when a motion to remove has been denied is to seek a writ of prohibition.' . . . Thus, a posttrial appeal

... [is] not the appropriate way for appellant to obtain review of the denial of his motion to remove." *State v. Azure,* 621 N.W.2d 721, 725 n. 3 (Minn.2001) (citing *State v. Cermak,* 350 N.W.2d 328, 331 (Minn.1984)); *see also State v. Dahlin,* 753 N.W.2d 300, 303 (Minn.2008) (stating that to preserve the peremptory-removal issue, a party must seek a writ of prohibition from the court of appeals). Grigsby acknowledges his failure to properly challenge the judge's denial of the notice to remove, but argues that this court should review the issue under a plain-error analysis.

Review for plain error on appeal generally pertains to matters not brought to the attention of the district court, rather than failure to pursue the proper appellate remedy. *See* Minn. R.Crim. P. 31.02 (providing that plain errors or defects affecting substantial rights may be considered by the court ... on appeal although they were not brought to the attention of the district court). But even if we were to consider review under a plain-error analysis, Grigsby has failed to demonstrate that plain error occurred.

Plain error is (1) error; (2) that is plain; and (3) that affects substantial rights. *State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998) (citing *Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997)). Grigsby has cited no authority for the proposition that a certification hearing is not an evidentiary hearing of which he had notice within the meaning of Minn. R.Crim. P. 26.03, subd. 13(4).[2] Absent such authority, if there was error, it was not plain. And Grigsby has not met his

"heavy burden" of demonstrating that the alleged error "was prejudicial and affected the outcome of the case." *Griller,* 583 N.W.2d at 741. Grigsby's argument on this prong of the plain-error analysis is limited to general statements about the purpose of the removal rule and the assertion that "[f]ailure to remove from the adult case after presiding at a contested certification hearing undermines the appearance of fairness and integrity of the judicial proceedings." We conclude that Grigsby has failed to demonstrate that he is entitled to any relief on appeal for this alleged error.

## II. Certification under Minn.Stat. § 260B.125 is not offense-specific, and the district court had jurisdiction over post-certification charges arising out of the same conduct that gave rise to the charge of second-degree intentional murder.

Grigsby argues that because the only offense alleged in the delinquency petition and considered in the certification hearing was second-degree intentional murder, the district court lacked subject-matter jurisdiction over the additional charge of second-degree felony murder and the lesser-included charge of second-degree manslaughter. Grigsby characterizes certification under Minn.Stat. § 260B.125 as "offense specific." We disagree.

A district court has only that jurisdiction conferred by the Minnesota Constitution or by law. *Carlson v. Chermak,* 639 N.W.2d 886, 889 (Minn.App.2002) (citing Minn. Const. art. VI, § 3 and Minn.Stat. § 484.01, subd. 1 (2000)). Minn.Stat.

---

**2.** "[T]he purpose of the rule[ ] is to give the parties one automatic right to remove a judge before that judge presides over a proceeding involving a substantive issue in the matter. After that point, removal can only be for cause shown." *Dahlin,* 753 N.W.2d at 308 (holding that, in the context of a new trial granted after appeal, a notice to remove is not effective to remove the judge who presided over the first trial).

§ 484.01, subd. 1 (2010), provides, in relevant part, that the district court has "original jurisdiction" in specified cases and "in all other cases wherein such jurisdiction is especially conferred upon them by law." We therefore examine the extent of jurisdiction conferred on the district court under Minn.Stat. § 260B.125.

"Statutory construction is a question of law, which this court reviews de novo." *In re Kleven,* 736 N.W.2d 707, 709 (Minn.App.2007). And this court reviews issues of subject-matter jurisdiction de novo. *State v. Davis,* 773 N.W.2d 66, 68 (Minn.2009).

"When a child is alleged to have committed, after becoming 14 years of age, an offense that would be a felony if committed by an adult, the juvenile court may enter an order certifying *the proceeding* for action under the laws and court procedures controlling adult criminal violations." Minn.Stat. § 260B.125, subd. 1 (emphasis added). Once the court enters an order certifying a proceeding, the jurisdiction of the juvenile court over the child terminates immediately if, as in this case, the child is detained at the time of certification and the alleged offense was committed in the same county where certification was ordered. Minn. R. Juv. Delinq. P. 18.08, subd. 2(A).

In *State v. Behl,* 564 N.W.2d 560, 564–65 (Minn.1997), the supreme court rejected the argument that once a jury acquits a juvenile of the allegation on which the district court's jurisdiction was based, the district court can no longer sentence him as an adult without first granting him a certification-type hearing. Behl, a juvenile, was alleged to have committed murder in the first degree after becoming 16 years of age, a crime over which the district court had original jurisdiction. *Behl,* 564 N.W.2d at 563–64. But Behl was acquitted of first-degree murder and convicted of lesser-included offenses. *Id.* at 562, 564. Behl did not dispute the district court's jurisdiction over all charges arising out of the conduct that led to his first-degree murder indictment, but he contended that once he was acquitted of first-degree murder, the district court lost jurisdiction and could not sentence him as an adult without granting him a certification-type hearing. *Id.* at 564. The supreme court held that, because the legislature intentionally failed to provide a mechanism for returning to juvenile court those cases in which district court jurisdiction had attached, the district court is without statutory authority either to transfer such a case to juvenile court for disposition or to grant the defendant a hearing to determine whether he should be sentenced as an adult or adjudicated as a juvenile. *Id.* at 566. Although *Behl* did not specifically address the district court's jurisdiction to try a defendant in adult court on charges other than the charges that triggered certification, we conclude that the legislature's failure to provide additional certification procedures expresses the legislature's intent that, after certification, any amendments to the complaint are governed by the rules applicable in adult court.

Grigsby attempts to distinguish *Behl* by noting that Minn. R. Juv. Delinq. P. 18.01, subd. 2, pertaining to charges of first-degree murder against persons more than 16 years old at the time of the crime, specifically provides that juvenile-court jurisdiction "terminates for all proceedings arising out of the same behavioral incident," while the rule applicable to certifications in this case, Minn. R. Juv. Delinq. P. 18.07, does not contain a similar provision and refers to adult-court prosecution "on the alleged offense(s) specified in the certification order." Minn. R. Juv. Delinq. P. 18.07, subds. 1(A), 2(A)(1). But rule 18.07 does not preclude the district court from

exercising jurisdiction over additional charges arising out of the conduct that underlies the offense or offenses specified in the certification order. And Grigsby provides no authority for the proposition that a court rule can deprive a district court of jurisdiction granted by law.

Here, the juvenile court's certification order specified the offense of second-degree intentional murder, and Grigsby was prosecuted as an adult for that offense. We find no merit in Grigsby's assertion that rule 18.07 deprives the district court of jurisdiction over other charges arising out of the same conduct when the legislature provided for certification of the "proceeding," rather than "offenses specified in the certification order." *See Reiter v. Kiffmeyer*, 721 N.W.2d 908, 911 (Minn.2006) (stating that "we will not read into a statute a provision that the legislature has omitted").

Grigsby also cites Minn.Stat. § 260B.125, subd. 7, which states that "[w]hen the juvenile court enters an order certifying an alleged *violation*, the prosecuting authority shall proceed with the case as if the jurisdiction of the juvenile court had never attached." (Emphasis added.) But we find no support in this language for Grigsby's position that the district court's jurisdiction is thereby limited to the violation cited in the certification order. The language provides that the district court has jurisdiction over the charge as if the charge had originated in district court, which necessarily includes jurisdiction over any additional related charges arising out of the same behavioral incident as permitted under the rules of criminal procedure. *See* Minn. R.Crim. P.

17.05. To hold otherwise would raise double-jeopardy issues and would conflict with Minnesota's policy against fragmented prosecutions. *See Behl*, 564 N.W.2d at 565 (noting that several courts have concluded, based on double-jeopardy concerns, that "adult-court jurisdiction based upon the automatic certification of a juvenile charged or indicted for an enumerated offense necessarily reaches non-enumerated offenses arising from the same behavioral incident").[3] The effect of Minn.Stat. § 260B.125, subd. 7, is to put the certified proceeding on the same footing as any criminal case in which the district court has original jurisdiction.

■ To the extent that Grigsby relies on authority from other jurisdictions to make a policy argument that a certified proceeding precludes the district court from exercising jurisdiction over any offense not stated in the delinquency petition and not considered in the certification proceeding, Grigsby is arguing to the wrong court. "[T]he task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court." *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn.App.1987), *review denied* (Minn. Dec. 18, 1987). We hold that certification under Minn.Stat. § 260B.125 is not offense-specific, and the district court had subject-matter jurisdiction over all offenses arising out of the conduct that gave rise to the certification.

### III. Minn.Stat. § 260B.125, as applied to Grigsby, did not violate due process.

Grigsby argues that he had a due-process right to a certification hearing on the

---

**3.** *See* Minn.Stat. § 609.035, subd. 1 (2010) (stating that "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquit- tal of any one of them is a bar to prosecution for any other of them. All the offenses, if prosecuted, shall be included in one prosecution which shall be stated in separate counts.").

charges of second-degree felony murder and second-degree manslaughter, and that right was violated if the district court obtained jurisdiction over those offenses by virtue of certification based on the charge of second-degree intentional murder. We disagree.

The Minnesota Constitution provides that "[n]o person shall be held to answer for a criminal offense without due process of law ... nor be deprived of life, liberty or property without due process of law." Minn. Const. art. I, § 7. The Fourteenth Amendment to the United States Constitution similarly provides that "[n]o state shall ... deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1. In order for a procedural due-process violation to exist, a person must suffer a loss of a liberty interest or property right. *State v. Mitchell*, 577 N.W.2d 481, 492 (Minn. 1998). Whether a due-process violation has occurred presents a question of constitutional law, which we review de novo. *See State v. Bobo*, 770 N.W.2d 129, 139 (Minn.2009) (stating that questions of constitutional law are reviewed de novo).

Grigsby was entitled to, and received, due process in the certification of the juvenile proceeding for trial in adult court. *Cf. Kent v. United States*, 383 U.S. 541, 562, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84 (1966) (holding that juvenile court's waiver of jurisdiction over an offense committed by a youth requires a hearing that "measure[s] up to the essentials of due process and fair treatment"). The issue is whether the legislature's grant of jurisdiction to the district court over related charges violates due process.

The process that is due in any given case is determined by weighing the private interest at stake against the government's asserted interest and the burdens that it would face in providing greater process. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). This balancing test requires an analysis of "the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Id.*

We begin by discussing the procedures used. In this case, certification was non-presumptive, and the state was required by Minn.Stat. § 260B.125, subd. 2(6)(ii), to show the juvenile court by clear and convincing evidence that retaining the proceeding in juvenile court would not serve public safety. And to determine whether public safety would be served by certifying the proceeding, the court was required to consider (1) "the seriousness of the alleged offense in terms of community protection, including ... the use of a firearm, and the impact on any victim"; (2) the child's culpability; (3) the child's prior record of delinquency; (4) the child's programming history; (5) the adequacy of punishment or programming available in the juvenile system; and (6) the available dispositional options. Minn.Stat. § 260B.125, subd. 4.

The state met its burden, and the district court supported its decision to certify with 120 findings, including numerous findings on each of the six factors that it was required to consider. *See In re Welfare of W.H.G.*, 2009 WL 1684487, at *2–6 (Minn. App.2009) (affirming certification). The findings include the details of Grigsby's conduct on August 23, 2008. That conduct supported charges of second-degree felony murder and second-degree manslaughter in addition to the second-degree intentional-murder charge. Grigsby has not explained how the certification procedures used in this case presented any risk of erroneous deprivation of a liberty interest.

We conclude that Grigsby has not demonstrated that Minn.Stat. § 260B.125, as applied, deprived him of due process.

## IV. The district court's exclusion of gang-related evidence during the state's case in chief was not reversible error.

█ Grigsby argues that the exclusion of gang-related evidence during the state's case in chief deprived him of his Fifth Amendment right to present a complete, fair, and meaningful defense, and his Sixth Amendment right to confront witnesses.

█ Due process requires that a person accused of an offense be "afforded a meaningful opportunity to present a complete defense." *State v. Quick*, 659 N.W.2d 701, 712 (Minn.2003) (quotation omitted) (citing U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7). "This right necessarily includes the ability to present the defendant's version of the facts through witness testimony." *State v. Penkaty*, 708 N.W.2d 185, 201 (Minn.2006).

█ The Confrontation Clauses of the federal and state constitutions serve the same purpose, affording a defendant the opportunity to advance his or her theory of the case by revealing an adverse witness's bias or prejudice. *State v. Pride*, 528 N.W.2d 862, 867 (Minn.1995) (quoting *State v. Elijah*, 206 Minn. 619, 624, 289 N.W. 575, 578 (1940)); *see also Stephens v. Miller*, 13 F.3d 998, 1013 (7th Cir.1994) (Cudahy, J., dissenting) (discussing the similarity between the right to present a defense and the right to confront accusers), *cert. denied*, 513 U.S. 808, 115 S.Ct. 57, 130 L.Ed.2d 15 (1994). But a defendant has no right to introduce evidence that is not relevant. *State v. Crims*, 540 N.W.2d 860, 866 (Minn.App.1995), *review denied* (Minn. Jan. 23, 1996).

█ We review a district court's evidentiary rulings under an abuse-of-discretion standard even when it is claimed that excluding the evidence deprived the defendant of the constitutional right to present a complete defense. *Penkaty*, 708 N.W.2d at 201. If this court determines that the district court's evidentiary ruling denied the defendant the right to present a complete defense, reversal is required unless the error is harmless beyond a reasonable doubt. *State v. Richardson*, 670 N.W.2d 267, 277 (Minn.2003).

The state concedes that evidence of gang membership may be admissible to show witness bias. Minn. R. Evid. 616; *State v. [Gary] Brown*, 455 N.W.2d 65, 69–70 (Minn.App.1990) (holding that possible gang membership of various witnesses would speak to their biases, but that preclusion of testimony on this issue was harmless error when testimony of alleged gang-member witnesses was consistent with that of witnesses not alleged to be gang members), *review denied* (Minn. July 6, 1990). On appeal, the state argues that, due to lack of foundation, Grigsby was not entitled to question the state's witnesses about gang membership to establish bias. *See State v. [Trevor] Brown*, 739 N.W.2d 716, 720 (Minn.2007) (outlining relevance and foundational limitations on cross-examination of state's witnesses about common gang membership). But the district court did not limit Grigsby's cross-examination based on lack of foundation.[4] And the state conceded that the evidence was

─────

4. The state also argued that gang-related evidence was more prejudicial than probative. But the district court's ruling was based on relevance to the state's case, and the district court did not limit the use of such evidence once Grigsby testified. Therefore, the district court did not determine that the prejudicial effect of such evidence outweighed its probative value.

relevant and admissible once Grigsby asserted self-defense based on his fear of assault by gang members.

Because the district court did not exclude gang-related evidence but only delayed its admission until Grigsby testified that it was related to his claim of self-defense, Grigsby's argument that he was precluded from presenting his defense or cross-examining witnesses for bias is without merit.

■ We are troubled by the state's repeated assertion, adopted by the district court, that Grigsby's testimony was the only way in which the relevance of gang-related evidence to self-defense could be established. The supreme court has stated that "a defendant's state of mind with respect to an actual and honest belief that he or she was in imminent danger of death or great bodily harm may be established circumstantially," and there is no requirement that a defendant must testify and provide direct evidence of such state of mind. *See State v. Johnson,* 719 N.W.2d 619, 631 (Minn.2006). But it appears from the record that Grigsby always intended to testify, and we conclude that Grigsby has waived any argument that his testimony was compelled by the district court's evidentiary ruling in this case.[5]

■ Grigsby argues that cross-examination of O'Neal on the issue of O'Neal's and J.S.'s membership in the same gang should have been allowed to establish bias or prejudice. Minn. R. Evid. 611(b) (stating that "[c]ross-examination should be limited to the subject matter of the direct examination *and matters affecting the credibility of the witness*" (emphasis added)); *see also State v. McDaniel,* 534 N.W.2d 290, 293 (Minn.App.1995) (stating

that courts generally allow a wide range of inquiry on cross-examination, particularly where there is a sharp conflict in the evidence and credibility is critical), *review denied* (Minn. Sept. 20, 1995).

A witness's possible gang membership has been held relevant to show bias. *[Gary] Brown,* 455 N.W.2d at 69 (involving the critical question at trial about whether appellant had the requisite intent and premeditation to support a determination that he attempted first-degree murder and stating that possible gang membership of various witnesses would speak to their bias, such that preclusion of testimony on this issue was error). But the district court did not preclude Grigsby's cross-examination of any witness about gang membership to show bias: the district court merely delayed admission of such evidence until Grigsby testified. Grigsby appears to have made a tactical decision not to recall witnesses before or after his testimony to pursue gang-membership issues. Under the circumstances of this case, we conclude that if precluding cross-examination of the state's eyewitness on gang membership during the state's case was error, it was harmless error.

A witness who has been impeached by a prior inconsistent statement is allowed to explain or deny the prior statement. Minn. R. Evid. 613(b). Grigsby argues that his inability to have his witness explain that she gave an inconsistent statement about the circumstances of the shooting out of fear of *gang* retaliation precluded him from presenting a complete defense. But it was Grigsby's tactical decision to call this witness before he testified about the significance of gangs to his defense. Grigsby's witness testified that she was scared of people "[f]rom the other

5. Grigsby raised this issue very briefly for the first time in his appellate reply brief. *See McIntire v. State,* 458 N.W.2d 714, 717 n. 2 (Minn.App.1990) (stating that issues not raised or argued in appellant's brief cannot be revived in a reply brief), *review denied* (Minn. Sept. 28, 1990).

side," and the state argues that any further explanation would not likely have altered the jury's perception of her testimony or changed the state's questioning of her credibility. Because Grigsby could have questioned this witness about the basis of her fear, we conclude that the district court's ruling, as it affected this witness's testimony, was not error, but even if error, was harmless.

■■■ Grigsby also argues that reference to gangs was necessary to provide the context of his recorded statements to the police, a redacted copy of which was introduced by the state, and that he should have been allowed to introduce the redacted portions of the statements. *See* Minn. R. Evid. 106 (providing that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered"). But the unredacted statement is not in the record, making it impossible for us to address this argument on appeal. *See State v. Carlson*, 281 Minn. 564, 566, 161 N.W.2d 38, 40 (1968) (stating that a "party seeking review has a duty to see that the appellate court is presented with a record which is sufficient to show the alleged errors and all matters necessary to consider the questions presented").

## V. Assault can be the predicate offense in a felony-murder charge.

■■■■ Grigsby argues briefly that "an assault cannot support a conviction of felony murder because it is not a separate and distinct crime, independent of the charged offense." Grigsby's argument is based on the " 'merger doctrine,' that a felony cannot support a conviction for felony murder unless the felony is independent of the homicide." *State v. Abbott*, 356 N.W.2d 677, 679 (Minn.1984) (noting the rejection

of the so-called "merger doctrine" in *State v. Jackson*, 346 N.W.2d 634, 636 (Minn. 1984)). Grigsby acknowledges that the supreme court has rejected the merger doctrine. As an error-correcting court, this court is "not in [a] position to overturn established supreme court precedent." *State v. Ward*, 580 N.W.2d 67, 74 (Minn. App.1998) (referring to this court's limitations as an intermediate appellate court); *State v. Adkins*, 706 N.W.2d 59, 63 (Minn. App.2005) (noting this court's role as "an error-correcting court"). Grigsby concedes this point and raises the issue merely to preserve it for further appeal to the supreme court.

## DECISION

Grigsby did not preserve for appeal the issue of the district court's failure to honor his removal notice and failed to establish that the district court committed plain error by declining to honor the notice.

Because certification under Minn.Stat. § 260B.125 is not offense-specific, the district court had subject-matter jurisdiction over the charges of second-degree felony murder and second-degree manslaughter that were added after certification. There is no merit to Grigsby's assertion that Minn.Stat. § 260B.125, as applied, deprived him of due process.

Because the district court's evidentiary rulings only delayed, but did not impede, Grigsby's ability to introduce gang-related evidence, we conclude that Grigsby was not precluded from presenting a complete defense or from cross-examining witnesses for bias. Any error in the district court's evidentiary rulings was harmless.

There is no merit to Grigsby's argument that felony assault cannot be the predicate offense to a felony-murder charge.

**Affirmed.**

Concurring specially, JOHNSON, Chief Judge.

JOHNSON, Chief Judge (concurring specially).

I concur in the opinion of the court but write separately to summarize an alternative analysis of the issue discussed in part IV.

In his initial brief, Grigsby argues that he was deprived of the constitutional right to a meaningful opportunity to present a complete defense. He states the general principles of this constitutional right in a single short paragraph, citing *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), as well as *State v. Richards*, 495 N.W.2d 187 (Minn.1992). He then proceeds, in the following 17 paragraphs, to cite and apply several of the Minnesota Rules of Evidence. In response, the state's brief also cites and applies several rules of evidence and, more specifically, argues that evidence of gang membership is unduly prejudicial, thereby implicating rule 403.

Grigsby's argument is similar to arguments frequently made in this court by criminal offenders who argue that a district court deprived them of the federal constitutional right to a meaningful opportunity to present a complete defense, which is based on the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S.Ct. 1727, 1731, 164 L.Ed.2d 503 (2006). Some of those offenders present arguments that suggest that the rules of evidence are incorporated into the constitution, or that a constitutional violation may occur even if a district court excludes a criminal defendant's evidence through a proper application of the rules of evidence. Contrary to this common understanding, the caselaw of the United States Supreme Court makes clear that the Due Process Clause of the United States Constitution does *not* incorporate the rules of evidence and does *not* require the admission of evidence that is inadmissible under the rules of evidence. Rather, the Supreme Court's caselaw establishes that the Due Process Clause ensures the normal operation of a state's rules of evidence in the face of other state laws that purport to restrict a criminal defendant's right to introduce evidence that is admissible under the rules of evidence.

For example, in *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the Court considered a state statute "providing that persons charged as principals, accomplices, or accessories in the same crime cannot be introduced as witnesses for each other." *Id.* at 15, 87 S.Ct. at 1921. The Court held that the state trial court's application of the statute denied Washington a meaningful opportunity to present a complete defense because it "arbitrar[ily]" excluded material testimony. *Id.* at 22, 87 S.Ct. at 1925. Similarly, in *Chambers v. Mississippi*, the Court held that a common-law rule preventing criminal defendants (but not the state) from impeaching their own witnesses denied Chambers his right to due process because the statute was applied "mechanistically" and without an "underlying rationale." 410 U.S. at 297, 302, 93 S.Ct. at 1046–47, 1049. Again, in *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), the Court held that a Kentucky procedure that prevented Crane from introducing evidence of the reliability of his confession denied him due process because such evidence is "germane to its probative weight, a matter that is exclusively for the jury to assess." *Id.* at 688, 106 S.Ct. at 2145. Likewise, in *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), the Court held that a common-law rule prohibiting hypnotically refreshed tes-

timony denied Rock his "right to present his own version of events in his own words" because the state law "arbitrarily exclude[d] material portions of his testimony." *Id.* at 52, 55, 107 S.Ct. at 2709, 2711. Finally, in *Holmes,* the latest case in this line, the Court held that a common-law rule preventing a defendant from introducing evidence of a third party's guilt if the state introduced "strong forensic evidence" of the defendant's guilt denied Holmes the right to a meaningful opportunity to present a complete defense because the rule was arbitrary, was illogical, did not consider "the probative value or the potential adverse effects" of the proffered evidence, and did not serve a valid purpose. 547 U.S. at 329–31, 126 S.Ct. at 1734–35 (internal quotation omitted).

Taken together, these cases demonstrate that the federal constitutional right to a meaningful opportunity to present a complete defense is intended to be a shield, not a sword. The Supreme Court's caselaw "prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." *Id.* at 326, 126 S.Ct. at 1732. But the caselaw does not disturb state laws and state rules of evidence that are rationally related to the truth-seeking function of a trial. Indeed, "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id.* For at least 25 years, the Court's caselaw has recognized the important distinction between the procedural rules that govern trials and the constitutional requirements of due process:

> We acknowledge ... our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts. In any given

criminal case the trial judge is called upon to make dozens, sometimes hundreds, of decisions concerning the admissibility of evidence.... [T]he Constitution leaves to the judges who must make these decisions wide latitude to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues. Moreover, we have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted.

*Crane,* 476 U.S. at 689–90, 106 S.Ct. at 2146 (citations, quotations, and alterations omitted). Accordingly, the federal constitutional right to a meaningful opportunity to present a complete defense may prevent the application of a limited category of state laws that would unduly restrict a criminal defendant's right to present evidence that is admissible under the rules of evidence; the right should not require the admission of evidence that is inadmissible under generally applicable rules of evidence. *See Holmes,* 547 U.S. at 331, 126 S.Ct. at 1735; *Rock,* 483 U.S. at 62, 107 S.Ct. at 2714; *Crane,* 476 U.S. at 691, 106 S.Ct. at 2147; *Chambers,* 410 U.S. at 302, 93 S.Ct. at 1049; *Washington,* 388 U.S. at 23, 87 S.Ct. at 1925.

A proper view of the Supreme Court's caselaw on the federal constitutional right to a meaningful opportunity to present a complete defense is illustrated by the Minnesota Supreme Court's opinion in *State v. Jenkins,* 782 N.W.2d 211 (Minn. 2010). In Minnesota, a defendant may introduce evidence that a third party is guilty of the offense charged only if the evidence "has an inherent tendency to connect the alternative party with the commission of the crime." *State v. Jones,* 678

N.W.2d 1, 16 (Minn.2004). In *Jenkins,* the appellant argued, among other things, that the constitutional right to a meaningful opportunity to present a complete defense should have permitted him to introduce evidence of an alternative perpetrator's guilt. 782 N.W.2d at 226 (citing *Jones,* 678 N.W.2d at 15–16 (citing *Chambers,* 410 U.S. at 294, 93 S.Ct. at 1045)). The supreme court rejected Jenkins's argument on the ground that the common-law rule is properly focused on the probative value of the proffered evidence itself. *See Jenkins,* 782 N.W.2d at 226. The supreme court distinguished Jenkins's contention from *Holmes,* which considered a state law that, arbitrarily and illogically, deemed alternative-perpetrator evidence to be inadmissible based on the nature of other evidence already in the record. *See id.* (citing *Holmes,* 547 U.S. at 330–31, 126 S.Ct. at 1735).

Given the rationale of the foregoing cases, little analysis is required to conclude that Grigsby's argument is without merit. Grigsby contends that the district court denied him his constitutional right to a meaningful opportunity to present a complete defense in two ways: first, by prohibiting him from cross-examining Walker about his membership in the East Side Boys gang prior to Grigsby's testimony about gang membership, and, second, by prohibiting him from cross-examining Bailey about her fear of the East Side Boys gang and its impact on her prior statement to law-enforcement officers.[6] The district court's rulings on these issues were not based on state laws that are arbitrary or illogical or "that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." *Holmes,* 547 U.S. at 326, 329–32, 126 S.Ct. at 1732, 1734–35. Rather, the district court's rulings were garden-variety applications of the rules of evidence. Accordingly, the district court's evidentiary rulings did not violate Grigsby's constitutional right to a meaningful opportunity to present a complete defense. *See id.* at 331, 126 S.Ct. at 1735; *Rock,* 483 U.S. at 55, 107 S.Ct. at 2711; *Crane,* 476 U.S. at 685–86, 106 S.Ct. at 2144; *Chambers,* 410 U.S. at 302, 93 S.Ct. at 1049; *Washington,* 388 U.S. at 23, 87 S.Ct. at 1925.

---

6. The Minnesota Supreme Court sometimes has stated that the right to a meaningful opportunity to present a complete defense is also based on the due process clause of the Minnesota Constitution. *See, e.g., Jenkins,* 782 N.W.2d at 225; *State v. Richardson,* 670 N.W.2d 267, 277 (Minn.2003); *State v. Quick,* 659 N.W.2d 701, 712 (Minn.2003); *Richards,* 495 N.W.2d at 191. The supreme court never has stated that the contours of the state constitutional right are different from the contours of the federal constitutional right.