STATE of Minnesota, Respondent,

v.

William GRIGSBY, Appellant.

No. A10–1686.

Supreme Court of Minnesota.

Aug. 1, 2012.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, Saint Paul, Minnesota, for respondent.

David W. Merchant, Chief Appellate Public Defender, Saint Paul, Minnesota, Andrew G. Birkeland, Special Assistant Public Defender, Minneapolis, Minnesota, for appellant.

Dan Rasmus, Minneapolis, Minnesota; and Marsha Levick, Jessica Feierman, Philadelphia, Pennsylvania, for amicus curiae Juvenile Law Center.

## OPINION

MEYER, Justice.

The issue in this case is whether a juvenile court's certification of the proceedings "for action under the laws and court procedures controlling adult criminal violations" is limited to the offense listed in the certification order. Minn.Stat. § 260B.125 (2010). The State filed a delinquency petition against 15–year–old appellant William Grigsby, alleging that Grigsby committed second-degree intentional murder. The juvenile court granted the State's motion to certify the proceeding to adult court. Based upon the certification order, Grigsby was charged in district court with second-degree intentional murder; the complaint was later amended to include second-degree felony murder. After a trial, the jury found Grigsby guilty of second-degree felony murder and second-degree manslaughter, but not guilty of second-degree intentional murder. The district court convicted Grigsby of second-degree felony murder and imposed a presumptive 180–month sentence.

On appeal, Grigsby argued that the district court lacked subject-matter jurisdiction over the amended charge of second-degree felony murder and the lesser-included offense of second-degree manslaughter. The court of appeals affirmed

the conviction, holding that the district court had jurisdiction over the charge specified in the certification order and other charges arising out of the same behavioral incident. The court also held that the certification process did not violate Grigsby's right to procedural due process. We granted Grigsby's petition for review.

On August 23, 2008, Grigsby encountered the victim at a back yard party in St. Paul. Grigsby and the victim had been involved in a fight at school approximately two years earlier. When Grigsby offered to shake the victim's hand, the victim declined the offer. After a brief "stare down," Grigsby pulled out a .44 caliber handgun and fired six shots, one of which fatally struck the victim in the chest.

A juvenile delinquency petition was filed against Grigsby on August 27, 2008, alleging that he had committed second-degree intentional murder, Minn.Stat. § 609.19, subd. 1(1) (2010). The State also moved for adult certification pursuant to Minn. Stat. § 260B.125, subd. 1, which allows a juvenile court to certify "the proceeding for action under the laws and court procedures controlling adult criminal violations." After an evidentiary hearing, the juvenile court made findings of fact and concluded that five of the six certification factors set forth in Minn.Stat. § 260B.125, subd. 4, weighed in favor of adult certification. Consequently, the juvenile court granted the State's motion to certify the proceedings to adult court.[1]

Based on the certification order, the State filed a complaint in the district court charging Grigsby with second-degree intentional murder. Grigsby pleaded not guilty and demanded a jury trial. Before trial, Grigsby provided the State a self-defense notice, based on the following assertions. The victim and many others at the party were members of the East Side Boys gang. After the victim refused to shake hands, members of the East Side Boys gang formed a semi-circle around Grigsby and pulled up their pants, signaling their intent to "jump" him. Also, Grigsby testified at trial that he believed he was going to be attacked. Therefore, he pulled out the gun and shot into the ground without intending to harm anyone. The gun was large and shooting it forced him to step backwards. The flash from the first shot caused him to close his eyes, and the gun just kept firing until it was empty.

The State filed an amended complaint that added a count of second-degree felony murder, Minn.Stat. § 609.19, subd. 2(1) (2010). Like second-degree intentional murder, the second-degree felony murder charge was subject to certification under Minn.Stat. § 260B.125 because the offense would be a felony if committed by an adult.

At trial, the State presented evidence consistent with the facts alleged in the complaint. Two witnesses testified that they were standing next to the victim during the "stare down" and saw Grigsby pull out the gun and start shooting. One of those witnesses opined that Grigsby "must have thought that we w[ere] going to beat him up" because he pulled out the gun and shot. When asked if he approached Grigsby in a threatening manner, the witness replied, "It depends on what you mean . . . by . . . threatening."

Grigsby testified in his own defense. He admitted that he took a loaded handgun to the party and concealed it in his

---

1. Although the order itself did not specify that the certification was for the charge of second-degree intentional murder, that was the only charge in the August 27, 2008, petition. Grigsby appealed the certification order, but he was denied relief. *In re Welfare of W.H.G.,* No. A08–1996, 2009 WL 1684487 (Minn.App. June 16, 2009), *rev. denied* (Minn. Aug. 26, 2009).

pants. He did not deny shooting, but testified that at the time he shot the gun, he was surrounded by East Side Boys gang members and thought he was going to "get jumped." He testified that he pulled out the gun and "the gun ... just kept going off" and then there was no one around him.

The jury acquitted Grigsby of second-degree intentional murder but found him guilty of second-degree felony murder and the lesser-included offense of second-degree manslaughter. Grigsby urged the district court to impose an extended juvenile jurisdiction (EJJ) disposition rather than an adult sentence, because the jury acquitted Grigsby of the only charge covered by the adult certification order. The district court imposed a 180–month sentence, the high end of the presumptive sentencing range, for the second-degree felony murder conviction.

On appeal, Grigsby raised five points of error, including "the district court lacked subject-matter jurisdiction over post-certification additional and lesser-included charges" and "alternatively, if the district court had jurisdiction over post-certification additional and lesser-included charges, Minn.Stat. § 260B.125, as applied, unconstitutionally denies appellant due process." *State v. Grigsby*, 806 N.W.2d 101, 104–05 (Minn.App.2011). The court of appeals affirmed the conviction and sentence, rejecting Grigsby's assertion that certification under Minn.Stat. § 260B.125 is offense specific.

Grigsby raises the following two questions on appeal to our court: (1) whether the district court obtained jurisdiction over only the offense expressly referenced in the certification order and, alternatively, (2) if the district court obtained jurisdiction to convict and sentence Grigsby on offenses not expressly referenced in the certification order, whether the application of the certification statute to Grigsby's case violated due process.

## I.

■ We first address the question of whether the district court's jurisdiction was limited to only the offense expressly referenced in the certification order. The de novo review standard controls our review of statutory interpretation issues. *State v. Caldwell*, 803 N.W.2d 373, 382 (Minn.2011); *see also State v. Behl*, 564 N.W.2d 560, 563 (Minn.1997).

Ordinarily, "the juvenile court has original and exclusive jurisdiction in proceedings concerning any child who is alleged to be delinquent." Minn.Stat. § 260B.101, subd. 1 (2010). However, "[w]hen a child is alleged to have committed, after becoming 14 years of age, an offense that would be a felony if committed by an adult, the juvenile court may enter an order certifying *the proceeding* for action under the laws and court procedures controlling adult criminal violations." Minn.Stat. § 260B.125, subd. 1 (emphasis added). "When the juvenile court enters an order certifying an alleged *violation*, the prosecuting authority shall proceed with the case as if the jurisdiction of the juvenile court had never attached." Minn.Stat. § 260B.125, subd. 7 (emphasis added). Unlike the EJJ statute,[2] section 260B.125 is silent on what happens if a jury acquits the defendant of the offense expressly referenced in the certification order, but finds the defendant guilty of a different offense.

When faced with a similar silence in the "automatic certification" statute, Minn.

---

**2.** The EJJ statute, Minn.Stat. § 260B.130, subd. 4(b) (2010), provides that "[i]f a child prosecuted as an extended jurisdiction juvenile ... is convicted of an offense after trial that is not an offense [subject to an EJJ prosecution], the court shall adjudicate the child delinquent and order a [juvenile] disposition."

Stat. § 260.015, subd. 5 (1998), we concluded that "the legislature's silence on the issue was intentional and unambiguous," especially in light of the explicit sentencing provision in the EJJ statute. *See State v. Behl*, 564 N.W.2d 560, 566 (Minn.1997). Behl was charged by a delinquency petition with five criminal counts, including first-degree murder. *Id.* at 562. Subsequently, the prosecution filed an adult criminal complaint, pursuant to the automatic certification statute. *Id.; see* Minn. Stat. § 260.015, subd. 5(b) (1998) ("The term delinquent child does not include a child alleged to have committed murder in the first degree after becoming 16 years of age....").  The jury found Behl not guilty of first-degree murder and other charges but found him guilty of "possession or operation of a short-barrelled shotgun, theft of a motor vehicle and manslaughter in the second degree." *Behl*, 564 N.W.2d at 562.  The issue in *Behl* was whether the district court retained jurisdiction to sentence Behl after he was acquitted of the only offense supporting automatic certification of the proceedings to adult court. *Id.* at 564.  Behl argued that "once the jury found him not guilty of the only allegation upon which the district court's jurisdiction was based, the district court no longer could sentence him as an adult without first granting him" a certification hearing. *Id.* We rejected Behl's argument: "[W]e hold ... that the district court had no statutory authority either to transfer the case to juvenile court for disposition, or to give the defendant a hearing to determine whether the defendant should be sentenced as an adult or adjudicated as a juvenile." *Id.* at 566.  We relied in part on the Legislature's failure to provide a procedural mechanism to return cases to juvenile court once district court jurisdiction attached. *Id.* at 564.  This failure, we said, was "intentional and therefore unambiguous." *Id.* at 566.

In this case, the court of appeals applied our reasoning in *Behl* to Grigsby's claim that Minn.Stat. § 260B.125 should be interpreted to be offense specific. *Grigsby*, 806 N.W.2d at 109–10.  The court of appeals emphasized that in enacting section 260B.125, the Legislature chose to permit the juvenile court to *certify the proceeding* for action under the laws and court procedures controlling adult criminal violations. *Id.* at 109.  The Legislature could have chosen to permit juvenile courts to *certify the offenses specified in the certification order* for action under the laws and court procedures controlling adult criminal violations, but it did not. *See American Heritage Dictionary* 1404 (5th ed.2011) (providing a legal definition of "proceeding" as "[t]he institution or pursuance of legal action"); *Black's Law Dictionary* 1241 (8th ed.2004) (defining "proceeding" as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment").  The court of appeals also emphasized that Grigsby's interpretation of section 260B.125 was unreasonable because it would create the double jeopardy concerns recognized by this court in *Behl*. *Grigsby*, 806 N.W.2d at 110 (citing *Behl*, 564 N.W.2d at 565).  Here, too, the issue before us is whether the district court's jurisdiction over the criminal prosecution of a child extends only to the offense(s) establishing district court jurisdiction.

Section 260B.125 is silent with respect to the procedure the district court should follow if the juvenile is acquitted of the offense(s) expressly referenced in the certification order.  The Legislature's silence in section 260B.125 is similar to the Legislature's silence in the automatic certification statute discussed in *Behl*.  We therefore conclude the Legislature's failure to provide a mechanism to transfer jurisdiction back to juvenile court in the event

a child is acquitted in district court of the offense(s) expressly referenced in the certification order was intentional and unambiguous. The Legislature intended for the district court to retain jurisdiction over charges arising out of the same behavioral incident that supported adult certification.[3]

■ Grigsby argues that the rule of lenity requires an interpretation that section 260B.125 is offense-specific. Because we conclude that section 260B.125 is unambiguous, the rule of lenity does not apply. *See State v. Leathers,* 799 N.W.2d 606, 611 (Minn.2011).

We conclude that Minn.Stat. § 260B.125 unambiguously permits the certification of a "proceeding," and that a "proceeding" includes non-enumerated offenses arising out of the same behavioral incident as the offense specified in the certification order. In this case, the second-degree felony murder offense and the second-degree manslaughter offense arose out of the same behavioral incident underlying the offense of second-degree intentional murder. Therefore, we hold that the district court had jurisdiction to convict and sentence on the charge of second-degree felony murder.

## II.

■ We next consider Grigsby's claim that the imposition of an adult sentence following an acquittal on the charge enumerated in the certification order violates his right to due process of law. We review questions of constitutional law de novo. *State v. Bobo,* 770 N.W.2d 129, 139 (Minn. 2009). Minnesota statutes are presumed to be constitutional. *Behl,* 564 N.W.2d at 566. A party challenging the constitution-

ality of a statute bears the heavy burden of proving the statute is unconstitutional beyond a reasonable doubt. *Id.*

■ The Minnesota Constitution provides that "[n]o person shall ... be deprived of life, liberty or property without due process of law." Minn. Const. art. I, § 7; *see also* U.S. Const. amend. XIV, § 1 ("No State shall ... deprive any person of life, liberty, or property, without due process of law...."). When asserting a procedural due-process claim, a person must establish the loss of a protectable liberty or property interest. *Behl,* 564 N.W.2d at 566.

■ If the Legislature provides a juvenile with a statutory right to "exclusive" juvenile court jurisdiction, however, the juvenile does have a protectable liberty interest in a juvenile adjudication, which attaches when the juvenile court attains jurisdiction. *See Kent v. United States,* 383 U.S. 541, 553–56, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); *Behl,* 564 N.W.2d at 567. Absent a statutory right to "exclusive" juvenile court jurisdiction, a child does not have any recognized protectable liberty interest in a juvenile adjudication. *See Behl,* 564 N.W.2d at 567; *see also Woodard v. Wainwright,* 556 F.2d 781, 785 (5th Cir.1977) (explaining "that treatment as a juvenile is not an inherent right but one granted by the state legislature, therefore the legislature may restrict or qualify that right as it sees fit, as long as no arbitrary or discriminatory classification is involved"), *cert. denied,* 434 U.S. 1088, 98 S.Ct. 1285, 55 L.Ed.2d 794 (1978); *State v. Angel C.,* 245 Conn. 93, 715 A.2d 652, 662–65 (1998) (explaining that state

---

**3.** We acknowledge that Minn. R. Juv. Delinq. P. 18.07 requires that an adult certification order state: "that adult court prosecution is to occur on the alleged offense(s) specified in the certification order." However, a court rule may not deprive the district court of jurisdiction over other charges arising out of the same conduct when the Legislature provided for certification of "the proceeding," rather than the "offenses specified in the certification order."

and federal courts have uniformly held that automatic certification statutes do not create a liberty interest in a juvenile adjudication).

A child's constitutional right to procedural due process prevents the State from depriving the child of his liberty interest in a juvenile adjudication without notice and a hearing. *Kent*, 383 U.S. at 557, 86 S.Ct. 1045; *Behl*, 564 N.W.2d at 567; *see also Armstrong v. Manzo*, 380 U.S. 545, 550, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965) (explaining that it is elementary that due process requires notice and an opportunity to be heard). The right to due process, however, "does not require the state to adopt any particular form of procedure so long as it appears that the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself." *State ex rel. Rajala v. Rigg*, 257 Minn. 372, 378, 101 N.W.2d 608, 612 (1960). In other words, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), *quoted in Bendorf v. Comm'r of Pub. Safety*, 727 N.W.2d 410, 415 (Minn. 2007).

Since "not all situations calling for procedural safeguards call for the same kind of procedure," *Morrissey*, 408 U.S. at 481, 92 S.Ct. 2593, the notice required by the right to due process will vary depending on the nature of the proceeding. For example, when the State alleges that a child is delinquent, due process requires timely notice of the "specific charge." *In re Gault*, 387 U.S. 1, 33, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *State v. McFee*, 721 N.W.2d 607, 612–13 (Minn.2006). But when the State intends to seek an upward sentencing departure, due process requires notice of the "proposed departure grounds." *State v. Kendell*, 723 N.W.2d 597, 612 (Minn.2006).

We have not previously discussed what type of notice is required by due process in an adult certification proceeding. To determine what type of notice is necessary in such a proceeding, we consider the nature of the State's accusation in an adult certification proceeding. When seeking a certification order under Minn. Stat. § 260B.125, subd. 2(6)(ii), the State alleges that the child committed an offense that would be a felony if committed by an adult and that retaining the proceeding in the juvenile court does not serve public safety. The public safety prong focuses on the following six factors: (1) the seriousness of the alleged offense, (2) the child's culpability, (3) the child's prior delinquency record, (4) the child's programming history, (5) the adequacy of programming or punishment available in the juvenile system, and (6) the dispositional options available to the child. Minn.Stat. § 260B.125, subd. 4. To enable a child to defend against a motion to certify the proceedings to adult court, we conclude that due process only requires the State to notify the child of the grounds supporting certification.

Unlike the type of notice required by due process, we have previously discussed the type of hearing required by due process in an adult certification proceeding. *In re Welfare of I.Q.S.*, 309 Minn. 78, 83, 244 N.W.2d 30, 36 (1976). Although a certification hearing need not conform to all of the requirements of a criminal trial, the hearing must include the right to counsel, access to the juvenile's social record, and a record of the juvenile court's reasoning. *Id.* at 83, 244 N.W.2d at 36.

Keeping in mind the due process principles discussed above, we turn to Grigsby's claim that his right to due process was violated because the State's adult certification motion failed to provide him notice of all the offenses he might face, including the less serious offenses of

second-degree felony murder and second-degree manslaughter. As a threshold matter, we note that pursuant to the juvenile delinquency jurisdiction statute, Minn. Stat. § 260B.101, subd. 1 (2010), the juvenile court had exclusive jurisdiction over Grigsby at the time of the adult certification hearing and therefore the State could not deprive Grigsby of his liberty interest in a juvenile adjudication without notice and a hearing.

With regard to Grigsby's right to notice, we conclude that due process did not require the State to notify Grigsby of all the less serious offenses he might face in adult court arising out of the same behavioral incident. The State did not rely on the less serious offenses as a ground supporting its motion to certify the proceedings to adult court, nor would express notice of the *less serious* crimes have helped Grigsby mount a defense to the State's motion, because the public-safety analysis required by Minn.Stat. § 260B.125, subd. 4, focuses on the child's *most serious* conduct.[4]

■ With regard to Grigsby's due-process right to a hearing, Grigsby does not claim that the juvenile court conducted the adult certification hearing in a manner that violated his right to due process. Instead, Grigsby claims that due process required the district court to hold a second adult certification proceeding because the jury only found him guilty of the less serious charges, none of which were listed in the juvenile court's certification order. At the time of the jury verdicts, however, the juvenile court no longer had jurisdiction, much less exclusive jurisdiction, over Grigsby for the conduct arising out of the August 23, 2008, behavioral incident. *See* Minn.Stat. § 260B.125, subd. 7 ("When the juvenile court enters an order certifying an alleged violation, the prosecuting authority shall proceed with the case as if the jurisdiction of the juvenile court had never attached."). In the absence of a statutory right to "exclusive" juvenile court jurisdiction, Grigsby no longer had a liberty interest in a juvenile adjudication for any offenses arising out of the August 23, 2008, behavioral incident. Consequently, due process did not require the district court to provide Grigsby with another hearing on the certification issue.

In sum, Minn.Stat. § 260B.125 unambiguously permits the certification of a "proceeding," and that "proceeding" includes non-enumerated offenses arising out of the . same behavioral incident as the offense

---

**4.** Although the State did not provide Grigsby express notice of all the less serious offenses he might face, existing statutes and rules provided Grigsby implicit notice that the State might charge him with the additional less serious offenses. In the delinquency petition filed against Grigsby, the State alleged that Grigsby "pulled [a] silver and black gun from his waistband and shot [J.W.]," and therefore Grigsby knew he would be subject to prosecution for the shooting death of J.W. Since proving the elements of a greater offense necessarily proves the elements of all lesser-included offenses, Minn.Stat. § 609.04, subd. 1(4) (2010), Grigsby implicitly knew at the time of the certification hearing that he might face the lesser-included offense of second-degree manslaughter. *See also People v. Wilder,* 485 Mich. 35, 780 N.W.2d 265, 271 (2010) (holding defendant's due process right to notice was not violated because "he was convicted of a necessarily included lesser offense of the crime with which he was charged"); *Wasylina v. State,* 275 S.W.3d 908, 910 (Tex. Crim.App.2009) ("[T]he submission of a lesser-included offense does not violate the defendant's constitutional due-process right to notice of the crime of which he is accused."). Similarly, Grigsby implicitly knew that he might face other less serious charges because Minn.Stat. § 260B.125, subd. 1, provides that, following certification, the proceeding is governed by adult rules of criminal procedure and those rules include a procedure for amending complaints. *See* Minn. R.Crim. P. 17.05 (governing amendments of complaints and indictments).

enumerated in the certification order. When the State does not rely on less serious offenses as a ground supporting a motion to certify the proceeding to adult court, and when notice of less serious crimes will not help the child mount a defense to the State's motion, due process does not require the State to notify the child of all the less serious offenses he might face. Following a valid certification order, a child no longer has a recognized liberty interest in a juvenile adjudication for offenses arising out of the behavioral incident that was certified to adult court, and therefore due process does not require a district court to provide the child another hearing on the certification issue.

Affirmed.