*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2355**

State of Minnesota,
Respondent,

vs.

Shelby Ivan Charles,
Appellant.

**Filed December 29, 2014
Affirmed
Crippen, Judge***

Hennepin County District Court
File No. 27-CR-12-37597

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Glenn P. Bruder, Mitchell, Bruder and Johnson, Edina, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Reyes, Judge; and Crippen, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CRIPPEN**, Judge

Challenging his conviction of first-degree criminal sexual conduct, appellant's primary contention centers on his spouse's decision not to testify after she recanted an accusatory statement to police. He alleges that the state threatened to prosecute his spouse if she testified and thereby violated his constitutional right to present a full and complete defense. Appellant also maintains that the district court abused its discretion by admitting prejudicial evidence and by denying his motion for a mistrial, that the evidence was insufficient to support his conviction, and that the district court plainly erred by failing to instruct the jury on the defense of voluntary intoxication. Because the record does not establish that the prosecutor substantially interfered with the witness's decision to testify, and because appellant's remaining claims are without merit, we affirm.

**FACTS**

On October 21, 2012, J.R. told her great aunt T.C. that T.C.'s husband, appellant Shelby Ivan Charles, had "tried to touch [J.R.'s] private part." T.C. reported J.R.'s allegation to child protection, and the matter was referred to law enforcement for investigation. J.R. was subsequently interviewed by a forensic investigator at CornerHouse and examined by a pediatrician. J.R. told the investigator that appellant asked to see her "jammy sue," and stated that appellant "touched inside [her] jammy sue," and "on the skin." The investigator asked J.R. what she was referring to by "jammy sue." J.R. indicated that she was referring to her vagina.

Appellant was arrested and charged with one count of first-degree criminal sexual conduct. At trial, J.R. testified that appellant entered her bedroom, told her to show him her "pussy" and put his finger "inside [her] private part." J.R. believed that appellant was intoxicated; she testified that he smelled like alcohol and stated that he told her that he would buy her an "airplane" and a "whole bunch of stuff" if she let him touch her.

Appellant denied engaging in sexual penetration of J.R. He testified that he and T.C. had recently fought about whether J.R. should continue to live in their residence. Appellant stated that he asked T.C. to return J.R. to her mother and that T.C. and J.R. left the home shortly thereafter. Appellant testified that T.C. falsified the sexual abuse allegations so that appellant would be removed from the home and T.C. could continue to care for J.R.

J.R.'s examining pediatrician testified that J.R. told her that appellant had "touched [her] down there" and that J.R. "vaguely pointed" to her vagina. The pediatrician also testified that J.R. did not inform her that appellant digitally penetrated her and that she did not locate any evidence of physical injury on J.R. She did testify, however, that she would not expect physical injury from digital penetration and that it was possible that J.R.'s perception regarding penetration was inaccurate.

Both parties anticipated that T.C. would testify at trial. But prior to jury selection, T.C.'s attorney informed the district court that T.C. would exercise her Fifth Amendment right against self-incrimination and decline to testify. The district court ordered that neither party make reference to out-of-court statements made by T.C. or to T.C.'s

decision not to testify. The jury found appellant guilty of first-degree criminal sexual conduct. This appeal follows.

**D E C I S I O N**

**1.**

Appellant argues that the state violated his right to present a full and complete defense because the prosecutor substantially interfered with T.C.'s decision to testify. Prior to trial, T.C. signed and had notarized a statement in which she recanted the allegations that she made against appellant. T.C. stated that appellant told her that she had to choose between J.R. and him, that she fabricated the allegations against appellant in order to "keep [J.R.] and get rid of [appellant]," and that she instructed J.R. to tell the doctor that appellant touched her. T.C. stated that she wanted to recant her prior allegations because she "[had] gotten [appellant] in trouble for something he didn't do."

On the day of trial, T.C.'s attorney informed the district court that the state had informed T.C. that it "would prosecute her whatever she testifies to," that "he's going to prosecute her with either giving false statements to the police or prosecute her for perjury." Likewise, the prosecutor also indicated that "[T.C.]'ll be prosecuted. It depends on the outcome." No record was made of the conversation, if any, that the prosecutor had with T.C. or her attorney, and no offer of proof was made regarding what T.C. would have testified to after she exercised her Fifth Amendment rights.

"Due process requires that defendants be afforded meaningful opportunity to present a complete defense." *State v. McArthur*, 730 N.W.2d 44, 54 (Minn. 2007). The right to present a complete defense includes "the right to present the defendant's version

4

of the facts through the testimony of witnesses." *State v. Richardson*, 670 N.W.2d 267, 277 (Minn. 2003). But a defendant does not possess the right to compel a prospective witness to waive his or her Fifth Amendment privilege against self-incrimination. *State v. Moose*, 266 N.W.2d 521, 525 (Minn. 1978).

Prosecutors are expected to ensure that witnesses understand their Fifth Amendment right against self-incrimination and to warn witnesses about the risks of committing perjury. *State v. Graham*, 764 N.W.2d 340, 349 (Minn. 2009). But the prosecutor, in making such a warning, cannot "exert such distress on the witness' mind" as to prevent the witness from making a voluntary choice to testify. *Id.*

In determining whether the state improperly threatened a witness, we are to consider whether the state's interference with the witness's decision to testify was substantial. *Id.* This determination is fact specific and includes consideration of "the manner in which the prosecutor . . . raises the issue, the language of the warnings, and the prosecutor's . . . basis in the record for believing the witness might lie." *Id.* at 350 (quotations omitted). Whether a due process violation has occurred is a question of constitutional law, which we review de novo. *State v. Bobo*, 770 N.W.2d 129, 139 (Minn. 2009).

In the circumstances of this case, the risk that T.C. would commit perjury was evident; she had made several conflicting statements and would be required to testify at trial that one of them was false. Thus, the prosecutor's duty to ensure that T.C. understood her right against self-incrimination was implicated, and the prosecutor was required to warn T.C. about the dangers of testifying falsely. The prosecutor

subsequently informed T.C.'s attorney about the risks that T.C. faced if she testified, including the possibility of criminal prosecution. But nothing in the record indicates that the prosecutor's warning was made for the purpose of coercing T.C., and there is no information in the record that demonstrates that the manner in which the prosecutor made the warning was intimidating or otherwise excessive. Based upon this record, we cannot conclude that the prosecutor's warnings caused T.C. such distress as to prevent her from deciding to testify freely and voluntary.

In addition, there are several other factors demonstrating that T.C. made her decision not to testify freely and voluntarily. T.C. retained her own attorney and spoke to him regarding her rights and the consequences of her decision to testify. The opportunity to consult with counsel demonstrates that the witness's decision whether or not to testify was made freely and voluntarily. *Graham*, 764 N.W.2d at 351. Moreover, T.C. acknowledged, before she retained counsel or spoke to the prosecutor, that she knew the risks she faced regarding her decision to recant. In her statement to appellant's trial counsel, T.C. admitted that her recantation was inconsistent with the allegations that she made to law enforcement and indicated that she understood that her statement could lead to "additional problems." For these reasons as well, we conclude that the state's interference with the witness's decision to testify was not substantial.

Finally, even if we were to conclude that the state substantially interfered with T.C.'s decision to testify, reversal would not be warranted because the record does not demonstrate that appellant suffered prejudice. Generally, a defendant is not entitled to a new trial in the absence of prejudicial error. *State v. Beecroft*, 813 N.W.2d 814, 846

6

(Minn. 2012). Here, T.C.'s attorney stated that T.C. would only tell "the truth," "[w]hatever the truth is." The prosecutor stated before trial that he believed T.C. would "recant her recantation," and appellant assumes on appeal that T.C. would have testified in his favor. No offer of proof was made regarding the substance of T.C.'s trial testimony. Because we cannot identify the harm that appellant suffered from the loss of T.C.'s testimony, we cannot conclude that appellant was prejudiced by T.C.'s decision not to testify.

**2.**

Appellant also argues that the district court erred by admitting portions of a telephone call that he made to T.C. following her decision to exercise her Fifth Amendment right. At trial, the state played the following segment:

> T.C.: I'm, I'm not against you.
>
> Appellant: Here's what I'm telling you. You're not helping me. That's not helping me. That's against me. It's not going to work out [T.C.]. Now that's two things that I can do here. If you can get Ella to say that none of this shit happened, that the girl didn't tell her that. Or I can always say you was in there helping me. See I can tell them people, look, here my wife helped me do this. Now, do you want that to happen?
>
> T.C.: No.
>
> Appellant: Ok then, so don't think you're outta the woods yet, [T.C.], cause you're not. And you think you're smart, and you don't give a fuck about me.

Appellant argues that the district court should have reviewed the entire recording to determine whether additional portions should have been played for contextual purposes

7

or that the district court should have excluded the portion that was played because it was unfairly prejudicial.

"Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). But the erroneous admission of evidence does not warrant reversal unless the error "substantially influence[d] the jury's decision." *State v. Nunn*, 561 N.W.2d 902, 907 (Minn. 1997). On review, appellant bears the burden of establishing that the district court abused its discretion and that appellant suffered prejudice. *Id*.

When a party introduces into evidence part of a recorded statement, the adverse party may require the introduction of any other part of the recorded statement which should be considered contemporaneously with it. Minn. R. Evid. 106. The "rule of completeness" applies only when additional portions of the recorded statement are necessary to give the jury the full understanding of the facts. *State v. Mills*, 562 N.W.2d 276, 286–87 (Minn. 1997). The rule of completeness may not be used to introduce statements that are irrelevant to the issues at hand. *Id*.

At trial, appellant conceded that additional portions of the recording included several statements by T.C. that had previously been excluded by the district court's pre-trial order. The rule of completeness does not permit parties to introduce additional portions of a recording if those portions include inadmissible evidence. *State v. Bauer*, 598 N.W.2d 352, 368 (Minn. 1999). And appellant has not reported any other portions of the conversation that might be admissible; as a result, it was not an abuse of the district

8

court's discretion to exclude additional portions of the recording from evidence, and appellant has failed to demonstrate prejudice.

Appellant contends that the district court should have reviewed the entire recording to determine whether additional portions should have been played for the jury. But under rule 106, the burden is on the party objecting to the recording to disclose the additional portions the objecting party believes should be played. *See* Minn. R. Evid. 106 (stating that "an adverse party may require the introduction . . . of any other part" of the statement); *see also State v. Grigsby*, 806 N.W.2d 101, 114 (Minn. App. 2011) (requiring party seeking review to disclose record of unredacted statement to permit meaningful appellate review), *aff'd*, 818 N.W.2d 511 (Minn. 2012). Appellant did not disclose to the district court the portions of the recording that he wished the jury to hear at trial and does not identify on appeal the portions that the district court should have played.[1]

For similar reasons, appellant's claim that the admission of the redacted recording was unfairly prejudicial also fails. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Minn. R. Evid. 403. "[U]nfair prejudice is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Bell*, 719 N.W.2d 635, 641 (Minn. 2006) (quotation omitted). Rule 403 generally favors the admission of relevant evidence. *State v. Schulz*, 691 N.W.2d 474, 478 (Minn. 2005).

---

[1] Appellant notes that the state never provided his trial counsel a full copy of the recording, but he does not argue on appeal that the state violated its discovery obligations.

9

Here, the redacted recording helped establish that appellant attempted to influence a potential witness's testimony, which is evidence that is relevant both to appellant's guilt and credibility. *See State v. Thao*, 649 N.W.2d 414, 420–21 (Minn. 2002) (stating that defendant's attempt to influence testimony supported finding of guilt). Because the credibility of appellant was a key issue to be decided by the jury, the redacted recording was highly probative. And appellant has failed to show that the evidence was unfair, either in its content or in omitting relevant evidence. The district court did not abuse its discretion by admitting the redacted portion of the recording into evidence.

**3.**

Appellant argues that the district court erred by denying his motion for a mistrial following the testimony of an investigator with the county attorney's office. During cross examination of the investigator, appellant's trial counsel asked whether he was aware that the events surrounding his investigation were alleged to have occurred in October. The investigator responded:

> That's what I – it didn't say that in the intake. It just said that she told – I believe it says that he told – [appellant] told the aunt that something happened and the aunt asked [J.R.]. That's what that said.

The district court struck the investigator's answer from the record. Appellant subsequently moved for a mistrial, arguing that the statement constituted inadmissible hearsay, that it contradicted the district court's order excluding T.C.'s out-of-court statements, and that the statement was unfairly prejudicial. The district court denied

10

appellant's motion and offered to provide a curative instruction if appellant requested. Appellant did not request an instruction.

We review the denial of a motion for a mistrial for an abuse of discretion. *State v. Jorgensen*, 660 N.W.2d 127, 133 (Minn. 2003). The district court is in the best position to evaluate whether an inadvertent outburst caused a defendant prejudice, or whether there is a reasonable probability that the outcome of the trial would be different had the outburst not occurred. *State v. Manthey*, 711 N.W.2d 498, 506 (Minn. 2006). In determining whether potentially prejudicial, but inadvertent, testimony deprived a defendant of the right to a fair trial, we consider: "the nature and source of the prejudicial matter, the number of jurors exposed to the influence, the weight of evidence properly before the jury, and the likelihood that curative measures were effective in reducing the prejudice." *State v. Hogetvedt*, 623 N.W.2d 909, 914 (Minn. App. 2001) (quotation omitted), *review denied* (Minn. May 29, 2001). Generally, "unintended responses under unplanned circumstances . . . do not require a new trial." *State v. Hagen*, 361 N.W.2d 407, 413 (Minn. App. 1985), *review denied* (Minn. Apr. 18, 1985).

Appellant challenged testimony from a state witness that was well beyond the scope of the question posed by appellant's trial counsel. There is no showing that the state was responsible for eliciting the testimony, and the remark itself was brief and relatively vague; the investigator testified that appellant told T.C. that "something happened." The district court immediately ordered the remark stricken from the record. No curative instruction was requested, and no additional reference was made to the

statement. Under these circumstances, the district court did not abuse its discretion in denying appellant's motion for a mistrial.

**4.**

Appellant also asserts that the evidence presented at trial was insufficient to support his conviction for first-degree criminal sexual conduct. Specifically, he asserts that the state failed to meet its burden to prove that appellant sexually penetrated J.R. or that appellant was more than 36 months older than J.R.

In reviewing a claim of insufficient evidence, we conduct "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction," is sufficient to allow the jurors to reach a guilty verdict. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted). To convict of first-degree criminal sexual conduct under the relevant provision, the state must prove that appellant engaged in sexual penetration with another person who was under the age of 13 and that appellant was more than 36 months older than the other person. Minn. Stat. § 609.342, subd. 1(a) (2012). Sexual penetration is defined as any intrusion, however slight, of any part of one person's body into the genital openings of another person's body. Minn. Stat. § 609.341, subd. 12.

Appellant relies primarily on the pediatrician's testimony to argue that the evidence is insufficient to establish that he sexually penetrated J.R. At trial, the pediatrician testified that J.R. told her that appellant touched her with his palm and stated that J.R. never informed her that appellant digitally penetrated her. The pediatrician also testified that it was possible that "what [J.R.] perceived as being something that went into

12

the actual vaginal opening maybe was just onto it instead of into it." Appellant asserts that this testimony disproves J.R.'s testimony that appellant digitally penetrated her.

But a complainant's testimony in a criminal sexual conduct case generally does not require corroboration, and corroboration of a child's allegations is required "only if the evidence otherwise adduced is insufficient to sustain conviction." *State v. Myers*, 359 N.W.2d 604, 608 (Minn. 1984). Here, J.R. testified that appellant digitally penetrated her, and her testimony was consistent with the statements she made during her interview with a forensic investigator. J.R. was able to describe when and where the assault took place; her testimony appeared detailed, thorough, and sufficient to establish the elements of the charged offense. Although the pediatrician was unable to determine whether appellant digitally penetrated J.R., the pediatrician did not testify that it was impossible for penetration to have occurred or that J.R.'s testimony was inconsistent with what J.R. told her during the examination. Instead, the pediatrician testified that it was possible that J.R.'s perception of whether penetration actually occurred was inaccurate. The jury's verdict indicates that it believed J.R.'s testimony, and we defer to the jury's credibility determinations. *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).

Likewise, there is sufficient evidence to support the jury's finding that appellant was more than 36 months older than J.R. Because J.R. testified that she was born on April 27, 2003, the jury must have found that appellant was born before April 27, 2000. Appellant admitted, in his own testimony, that he had been convicted of offenses in 1998 and 1999. Based upon his testimony, the jury could reasonably infer that appellant was alive in both years and, thus, more than 36 months older than J.R. Moreover, the jury

13

observed both J.R. and appellant in the courtroom, and inferences the jury was free to make from their appearance were not disputed during the trial.

**5.**

Finally, appellant argues that the district court should have instructed the jury on the defense of voluntary intoxication. Because appellant did not request this instruction at trial, we review whether the district court's failure to sua sponte give the instruction constituted plain error. *State v. Laine*, 715 N.W.2d 425, 432 (Minn. 2006). To establish plain error, appellant must demonstrate that there is an error, the error is plain, and the error affects substantial rights. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006).

To receive a voluntary intoxication instruction, a defendant must demonstrate that: (1) the defendant is charged with a specific-intent crime; (2) there is sufficient evidence to support a jury finding by a preponderance of the evidence that the defendant was intoxicated; and (3) the defendant offered intoxication as an explanation for his actions. *State v. Torres*, 632 N.W.2d 609, 616 (Minn. 2001). And generally, the intoxication defense is unavailable to those who deny that sexual contact occurred. *See State v. Austin*, 788 N.W.2d 788, 794 n.5 (Minn. App. 2010). But the intoxication defense may be implied if there is "overwhelming" evidence of intoxication that "constitute[s] the effective offer of the defense." *Id*.

Because appellant did not offer intoxication as an explanation for his actions, he must demonstrate that there was overwhelming evidence of intoxication to warrant a voluntary intoxication instruction. At trial, there was ample evidence demonstrating that appellant consumed alcohol on the night of the incident. But appellant repeatedly denied

14

being intoxicated—he admitted he felt the effects of liquor, but testified that he was not a "mad drunk," nor "out of [his] mind." Instead, appellant asserted, in several instances, that he retained control of his actions and that he remembered everything that occurred on the night of the incident. Evidence that a defendant consumed alcohol is insufficient to demonstrate that intoxication was the reason for the defendant's actions. *See Torres*, 632 N.W.2d at 617 (stating that a defendant's consumption of intoxicants "does not create a presumption of intoxication . . . and does not create the presumption that a defendant is rendered incapable of intending to do a certain act"). On this record, the district court did not plainly err by failing to instruct the jury on the defense of voluntary intoxication.[2]

**Affirmed.**

---

[2] Because of our conclusion on this issue, we do not reach the question of whether appellant was charged with a specific-intent crime that would allow him to assert this defense.