*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1148**

State of Minnesota,
Respondent,

vs.

Kevon Deonte Lewis-Ferguson,
Appellant.

**Filed April 20, 2015**
**Affirmed**
**Stoneburner, Judge***

Hennepin County District Court
File No. 27-CR-13-29161

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Reyes, Presiding Judge; Halbrooks, Judge; and

Stoneburner, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**STONEBURNER**, Judge

Appellant challenges his conviction of prohibited person in possession of a firearm, arguing that the evidence is insufficient to support the verdict and that he was denied a fair trial by the district court's evidentiary rulings, including reading to the jury his stipulation to an element of the offense. We affirm.

**FACTS**

A number of Minneapolis police officers in unmarked squad cars were conducting surveillance at Phelps Park in Minneapolis on a day in early September 2013. Officer Steven Lecy saw appellant Kevon Deonte Lewis-Ferguson open the back driver's side door of an SUV near the park. Lecy saw Lewis-Ferguson remove what appeared to Lecy to be a black handgun from the waistband of his pants. Lecy saw Lewis-Ferguson place the gun on the floor of the SUV. Lecy saw Lewis-Ferguson enter the SUV and emerge carrying a balled-up sweatshirt like a football. Lecy described Lewis-Ferguson as "looking like all over the place very suspiciously, like he was incredibly nervous" as he walked through and out of the park. Lecy observed that the sweatshirt Lewis-Ferguson carried was grey with red airbrush painting on it. Lecy recognized Lewis-Ferguson from pictures he had seen of him. Lewis-Ferguson had dreadlocks and was wearing a purple tee shirt. Lecy communicated his observations to the other officers, including Officer Brian Grahme, who is personally acquainted with Lewis-Ferguson. Grahme and other officers visually tracked Lewis-Ferguson's movements.

Lewis-Ferguson, carrying the sweatshirt and talking on a cellular telephone, was observed walking between houses and entering an alley between Oakland and Park Avenue. An order was given to stop him. When Lewis-Ferguson was stopped he was no longer carrying the sweatshirt. Officers immediately searched the area and found the sweatshirt under a bench with a dustpan on top of it. A handgun was wrapped inside the sweatshirt.

No identifiable fingerprints or DNA were found on the gun. Only Officer Lecy's fingerprints and those of a person not identified at trial were found on the dustpan. A DNA profile obtained from the sweatshirt was consistent with a mixture of two or more people, and the predominate profile matched Lewis-Ferguson.

Lewis-Ferguson, who has a prior felony conviction, was charged with possession of a firearm by a prohibited person in violation of Minn. Stat. § 624.713, subds. 1(2), 2(b) (2012). Lewis-Ferguson stipulated that he is prohibited from possessing a firearm but denied that he is the person whom officers saw with the sweatshirt and the gun.

At trial, testimony established that Lewis-Ferguson had worn the distinctive sweatshirt a few days earlier in connection with a music video being made to commemorate the death of Justin Jackson, known to Lewis-Ferguson and others as "Gettums." Jackson had been stabbed to death on August 19, in an area referred to as the "eight block," that Jackson and his friends, including Lewis-Ferguson, were known by police officers to frequent. Airbrushed in red on the grey sweatshirt was the phrase "Bustin' for Gettums," the numbers eight and 19, the words "eight block" and depictions of shell casings. The district court sustained an objection to an officer's testimony that

3

Jackson was a "well-respected Bloods gang member" and ordered that testimony stricken. The order was not accompanied with an immediate instruction to the jury to disregard the statement, but in final instructions, the jury was instructed to disregard any testimony that the district court had ordered stricken.

Lewis-Ferguson testified that, before the sweatshirt was introduced into evidence at trial, he last saw the sweatshirt on the day the video was made. He testified that he saw the SUV but did not approach it. Lewis-Ferguson testified that he left the park on a bicycle to buy cigars, returned to the park on the bicycle and then left on foot with others to smoke the cigars at a location outside of the park. He testified that the purple tee shirt he was wearing was from a family reunion, that another person was wearing a similar tee shirt in the park that day, and that he is frequently mistaken for others in his family.

Lewis-Ferguson intended to call a witness who, he asserts, would have testified that he, the witness, was wearing a purple tee shirt that day, approached the SUV, and walked through the park. But after the district court ruled that this witness could be impeached with evidence of his and Lewis-Ferguson's gang affiliation, Lewis-Ferguson did not call this witness.

Lewis-Ferguson stipulated that he is ineligible to possess a firearm, and his stipulation was read to the jury by agreement of the parties. The jury found Lewis-Ferguson guilty, and the district court sentenced him to 60 months in prison. This appeal followed.

4

**D E C I S I O N**

1.      **The evidence is sufficient to support the conviction.**

When considering a sufficiency-of-the-evidence challenge to a verdict, this court examines the evidence in the light most favorable to the conviction to determine if it would permit a jury to reasonably conclude that the defendant is guilty of the offense. *State v. Nelson*, 812 N.W.2d 184, 187 (Minn. App. 2012). We assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). A reviewing court will not disturb a verdict if the jury, "acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense." *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012).

Direct and circumstantial evidence are entitled to the same weight. *State v. Bauer*, 598 N.W.2d 352, 370 (Minn. 1999). "Circumstantial evidence must form a complete chain that, as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Hanson*, 800 N.W.2d 618, 622 (Minn. 2011). Circumstantial evidence is reviewed under a two-step analysis: first, the identification of the circumstances proved and second, the determination of whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except guilt. *Ortega*, 813 N.W.2d at 100.

The parties agree that the jury in this case was presented with both direct and circumstantial evidence. The state argues that Officer Lecy's eyewitness testimony is direct evidence sufficient to support the guilty verdict and that heightened review of the

circumstantial evidence presented is unnecessary. Lewis-Ferguson argues that Lecy's identification of the object he saw was equivocal and because most of the evidence presented by the state is circumstantial evidence, the verdict should be reviewed under the heightened standard.

In *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013), the supreme court declined to resolve the parties' similar dispute about the appropriate standard of review, concluding that even under the "more favorable" circumstantial-evidence standard, the evidence was sufficient to sustain the jury's verdict. Likewise, because in this case the evidence is sufficient to support the verdict even under the heightened standard of review, we decline to address the state's assertion that the direct evidence is sufficient to support the verdict, obviating the need for heightened scrutiny. As we recently noted in *State v. Sam*, 859 N.W.2d 825, 831 (Minn. App. 2015), the supreme court has repeatedly applied the heightened standard when the state's case is based largely on circumstantial evidence. Because the state presented a large amount of circumstantial evidence to prove its case, we will apply the heightened standard.

Lewis-Ferguson asserts that, under the circumstances proved, it is reasonable to infer that he was misidentified as the person with the gun and as the person who hid the sweatshirt-wrapped gun. We disagree.

Relevant circumstances proved in this case are that (1) Officer Lecy saw Lewis-Ferguson remove from his waistband what appeared to him to be a black handgun and place the gun in the SUV; (2) Officer Lecy saw Lewis-Ferguson enter the SUV, exit carrying a grey sweatshirt that Lewis-Ferguson admits to owning, and walk nervously

6

across and out of the park; (3) Officer Grahme, who has known Lewis-Ferguson for five years, saw Lewis-Ferguson leave the park carrying the sweatshirt; (4) Sergeant Mercil saw a man with dreadlocks matching Lewis-Ferguson's description wearing a purple shirt approach the SUV and walk away carrying the grey sweatshirt that officers later found in an alley under a bench and dustpan with a gun wrapped inside; (5) officers saw Lewis-Ferguson, carrying the sweatshirt and talking on his cell phone, enter the alley where the sweatshirt and gun were found soon after Lewis-Ferguson was arrested; (6) the sweatshirt had been worn by Lewis-Ferguson in connection with the making of a video titled "Bustin' for Gettums" and contained language and illustrations that refer to shooting; (7) while officers were looking for the sweatshirt, a group of people entered the alley and began searching for something, consistent with the officers hypothesis that Lewis-Ferguson had telephoned for assistance. These circumstances do not support a reasonable inference that Lewis-Ferguson was misidentified at any point in the officers' observations. The evidence, direct and circumstantial, is sufficient to support the verdict.

2.     **The district court did not admit evidence that Lewis-Ferguson is affiliated with a gang, and to the extent that there was any abuse of discretion in the admission of evidence that could have referred to gang affiliation, Lewis-Ferguson was not prejudiced.**

Lewis-Ferguson asserts that the district court erroneously admitted evidence that prejudicially implied he is affiliated with a gang, which, he asserts, is character evidence irrelevant to the charge of illegal possession of a firearm. *See* Minn. R. Evid. 402. Alternatively, Lewis-Ferguson argues that any probative value of such evidence is outweighed by its prejudicial effect. *See* Minn. R. Evid. 403; *State v. Jackson*, 726

7

N.W.2d 454, 463 (Minn. 2007) (stating that "gratuitous testimony about a defendant's gang membership or bad character may be unduly prejudicial").

Lewis-Ferguson first points to Officer Grahme's testimony that Jackson "was a well-respected Bloods gang member." The district court sustained an objection to this testimony and ordered it stricken from the record without also immediately instructing the jury to ignore the testimony. But Lewis-Ferguson did not request a cautionary instruction at that time. And in its final instructions to the jury, the district court directed the jury to "disregard all evidence I have ordered stricken or have told you to disregard." We presume that a jury follows the district court's instructions. *State v. Miller*, 573 N.W.2d 661, 675 (Minn. 1998). We conclude that Lewis-Ferguson has not demonstrated any abuse of discretion or prejudice from the district court's failure to give an unrequested cautionary instruction at the time it ordered the testimony stricken.

Lewis-Ferguson also challenges many of the prosecutor's questions, none of which mentioned gangs and none of which called for or resulted in responses involving gangs or gang affiliation. *See Jackson*, 726 N.W.2d at 463 (noting that concerns about "gratuitous testimony about a defendant's gang membership" were not implicated because "there was no actual mention of gang membership"). Yet Lewis-Ferguson argues testimony regarding the following subjects imply gang affiliation: the significance of the words "eight-block" and shell-casing drawings on the sweatshirt; the content of the music-video tribute to Jackson; the meaning of the phrase "go hard to the eight block" used in the video; the meaning of "Bustin' for Gettums"; reference to the officers' "legitimate purpose" for being at the park; that Lewis-Ferguson and his associates could

8

be found at a certain location; and that only a person with a "death wish" would wear Lewis-Ferguson's sweatshirt.

Lewis-Ferguson cites several instances in which the district court overruled objections to the testimony described above. We review properly objected-to evidentiary rulings for abuse of discretion. Lewis-Ferguson has the burden to prove abuse of discretion and that admission of the evidence was prejudicial. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

The district court overruled a general objection to a question asking Officer Grahme to explain the significance of the phrase "eight block" that appears on the sweatshirt. Grahme testified that it refers to an area around "38th and Chicago" where Lewis-Ferguson and his associates could be found and where Jackson was fatally stabbed. This testimony connected the sweatshirt to Lewis-Ferguson. The state did not know whether Lewis-Ferguson was going to testify and did not know that he was going to concede ownership of the sweatshirt. Because the state was attempting to prove that the sweatshirt belonged to Lewis-Ferguson, we conclude that the district court did not abuse its discretion by permitting this testimony.

The district court overruled relevance objections to questions regarding the meaning and significance of drawings of shell casings on Lewis-Ferguson's sweatshirt. These questions were asked on cross-examination after Lewis-Ferguson had testified at some length about the sweatshirt and the tribute video for which it was made. Even if the relevance of this evidence is so negligible as to make its admission an abuse of discretion,

we conclude that Lewis-Ferguson has failed to establish any prejudice from this evidence, which was highly unlikely to have had any impact on the verdict.

The district court also overruled a "speculation" objection to the questioning of Officer Grahme about whether, based on his experience, someone not associated with Lewis-Ferguson or his friends could "get away with" wearing the sweatshirt that was used in the tribute video. On appeal, Lewis-Ferguson argues that the testimony was not relevant. An objection must be specific as to the basis of the challenge. *State v. Rodriguez*, 505 N.W.2d 373, 376 (Minn. App. 1993), *review denied* (Minn. Oct. 19, 1993). Because the basis of the challenge on appeal is different from the challenge made in district court, we review the challenge to this evidence as well as the challenges to unobjected-to evidence for plain error.

To establish plain error with regard to unobjected-to, or improperly objected-to evidence, Lewis-Ferguson must establish (1) error, (2) that is plain, and (3) that affects his substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). And even if plain error is established, we assess whether the error must be addressed to ensure the fairness and integrity of the judicial proceeding. *Id.*

An error is plain if it was "clear" or "obvious." *State v. Strommen*, 648 N.W.2d 681, 688 (Minn. 2002) (quotation omitted). An error affects a substantial right if it is prejudicial, meaning there is a reasonable likelihood that the error substantially affected the verdict. *Id.* Because none of the unobjected-to or improperly objected-to evidence mentions gangs or gang members or requires an inference that Lewis-Ferguson is

10

affiliated with a gang, we conclude that Lewis-Ferguson has failed to establish error, let alone error that is plain or that affected Lewis-Ferguson's substantial rights.

**3.      The district court did not abuse its discretion or deny Lewis-Ferguson the opportunity to present a complete defense by ruling that evidence of gang affiliation would be admissible to impeach the witness Lewis-Ferguson intended to call.**

The district court's ruling that Lewis-Ferguson's proposed witness could be impeached with evidence of his and Lewis-Ferguson's gang affiliation is an evidentiary ruling reviewed for abuse of discretion even though Lewis-Ferguson claims that the ruling deprived him of the constitutional right to present a complete defense. *State v. Grigsby*, 806 N.W.2d 101, 112 (Minn. App. 2011), *aff'd*, 818 N.W.2d 511 (Minn. 2012). Denial of the right to present a complete defense requires reversal unless the error is harmless. *Id.*

It is well-established that evidence of gang membership may be admissible to show witness bias. *See United States v. Abel*, 469 U.S. 45, 49, 105 S. Ct. 465, 467 (1984) (holding that evidence showing shared gang membership is "sufficiently probative of [witness's] bias towards [defendant] to warrant its admission into evidence"); *Grigsby*, 806 N.W.2d at 113 ("A witness's possible gang membership has been held relevant to show bias."). And it has been acknowledged that shared gang affiliation is not only relevant to establish bias but is relevant to show "the source and strength" of that bias. *Abel*, 469 U.S. at 54, 105 S. Ct. at 470 (emphasis omitted). The district court did not abuse its discretion by ruling that evidence of the gang affiliation of the proposed witness and Lewis-Ferguson is admissible to show bias.

11

Additionally, Lewis-Ferguson has failed to establish that the district court's ruling prevented him from presenting a complete defense. The ruling did not prevent Lewis-Ferguson from calling his witnesses and did not prevent Lewis-Ferguson from testifying about his misidentification defense. Lewis-Ferguson testified that he was not the person the police saw with a gun at the SUV or the person walking around the park and into the alley with the sweatshirt. We find no merit in Lewis-Ferguson's claim that the district court's ruling deprived him of the opportunity to present a complete defense.

**4.      Reading Lewis-Ferguson's stipulation that he is ineligible to possess a firearm did not deny Lewis-Ferguson a fair trial.**

By agreement of the parties, the district court read the following to the jury before Lewis-Ferguson testified:

> The parties have stipulated that Kevon Lewis-Ferguson is ineligible to possess a firearm under Minnesota law. The Court instructs you that you are bound by the stipulation agreed to by the parties. . . . You are not to speculate about why Mr. Lewis-Ferguson is ineligible to possess a firearm.

When the district court, without objection, instructed the jury at the end of trial on the elements of the charge against Lewis-Ferguson, the instruction stated, in relevant part:

> For purposes of this trial, the parties have agreed that the defendant is a person prohibited from possessing a firearm. Thus, element two has been proven beyond a reasonable doubt and you do not need to decide that element.

Lewis-Ferguson's argument is based on a comment to CRIMJIG 32.17, stating that a defendant is entitled to stipulate to being prohibited from possessing a firearm, in which case the "element should be deleted from the instruction." 10A *Minnesota Practice*, CRIMJIG 32.17 cmt. (2006). But this comment relies on *State v. Davidson*, 351 N.W.2d

12

8, 12 (Minn. 1984), in which the supreme court suggests the contrary. According to *Davidson*, when ineligibility to possess a firearm is stipulated, the district court should instruct the jury that a defendant has stipulated that he is not entitled to possess a firearm and that the jury should therefore direct its attention to the sufficiency of the evidence of possession. *Id.*

Because there is no authority to support Lewis-Ferguson's assertion that the district court was required not to mention the stipulation and to omit the stipulated element from the instructions, we find no merit in his argument that the district court's handling of the stipulation in this case constituted error, let alone plain error.

**Affirmed.**